338

THE TRADERS' INSURANCE COMPANY *et al. v.* FRANCES T. RACE,

and

THE AGRICULTURAL INSURANCE COMPANY *v.* FRANCES T. RACE.

*Filed at Ottawa June 20, 1892.*

1. INSURANCE — *assignment of policy to secure mortgage — rights of mortgagor.* Where the purchaser of property which was insured for $6000, mortgaged the same for $5000, and, with the consent of the insurance company, assigned the policy to the trustee of the mortgage, to whom it was made payable, and the consent of the company attached to the original policy stated that the insurance only as to the interest of the mortgagee or trustee should not be avoided by the conditions therein contained, it was *held,* that the mortgagor had an interest in the policy to see that in case of a loss his debt was paid and the balance of the insurance money was paid to him, which he might forfeit for breach of the conditions applicable to him.

2. SAME — *conditions applicable to the mortgagor and mortgagee.* A mortgagor may take a policy of insurance on the mortgaged premises for the benefit of himself as well as security to the mortgagee, and if the policy contains a condition of avoidance if the property is allowed to become vacant and unoccupied as a dwelling house, it is competent for the insurance company, on consenting to a transfer of the policy to secure the mortgagee, to provide that such condition shall not apply as to the latter. In that case, a breach of the condition will avoid the policy as to the mortgagor, and defeat his rights under the same.

3. SAME — *policy securing mortgage debt — subrogation of company to rights of mortgagee.* Where a policy of insurance is given which provides for the payment of a mortgage debt, and the balance to the mortgagor in case of a loss by fire, subject to a condition, as to the latter, that the premises shall not cease to be used as a dwelling, and also that if the company shall claim the policy is avoided as to the mortgagor, and shall pay the debt, it shall be subrogated to the rights of the mortgagee, the right to be thus subrogated will depend upon the fact whether the policy is defeated, as to the mortgagor, by a breach of the condition, and not upon the fact the company claims such forfeiture.

4. In such case, to entitle the insurance company to be subrogated to the rights of the mortgagee, and to foreclose the mortgage, the burden is upon it to prove that the loss occurred under such circumstances as to exempt it from liability to the mortgagor for the loss of the property.

5. SAME — *right of subrogation is one of equitable cognizance.* The right of an insurance company paying a mortgage debt to the mort-

gagee, to be subrogated to the rights of the mortgagee and foreclose the mortgage, is one of equitable cognizance, and a court of equity having jurisdiction of the subject matter has the power to determine all incidental questions affecting the right claimed.

6. SAME—*condition against allowing property to become vacant—proof in a court of equity.* In a court of equity, to entitle an insurance company to avail of a breach of a condition against allowing the property to become vacant or unoccupied, it must prove, not merely that the premises were vacant or unoccupied at or before the loss occurred, but that such vacancy or want of occupancy contributed, in some degree, to the causing of the fire or the prevention of its extinguishment.

7. CHANCERY PROCEEDINGS—*evidence and relief must be within the principles of equity—equity will not enforce a penalty.* Where an insurance company seeks relief in a court of equity rather than in a court of law, where the insured may have a jury trial, the evidence to be considered and the relief that shall thereupon be granted must be such as are within the principles applied in courts of equity. One of those principles is, that equity will never enforce either a penalty or a forfeiture.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

August 28, 1882, appellants, the Traders' Insurance Company and the Agricultural Insurance Company of Watertown, New York, issued their several policies of insurance on a frame dwelling, and furniture therein, to Sarah Hirsch, owner, running five years, in the sum of $2500 each on the house and $500 on the furniture, aggregating $6000 of insurance against loss or damage by fire. The policy issued by the Traders's Insurance Company contained the provision: "If the above mentioned premises shall be occupied or used so as to increase the risk, or become vacant or unoccupied, and so remain without notice to and consent of this company in writing, or the risk be increased by the erection or occupation of neighboring buildings, and by any means whatever, within the control of the assured, without the assent of this company endorsed thereon," then the policy shall be void. The policy of the Agricultural Insurance Company contained a condition

as follows: "If, at the time of effecting this insurance, any dwelling house hereby insured shall be unoccupied as a dwelling, and not so stated in the application, or if, without written consent and endorsement thereon, such dwelling house shall cease to be occupied as a dwelling house, then, so long as such dwelling house shall be so unoccupied, this policy shall be void and of no force and effect."

July 9, 1884, Mrs. Hirsch sold and conveyed all the property insured, including the furniture, to Miss Frances T. Race, who, to secure the unpaid purchase money, gave her four promissory notes of that date, payable to Sarah Hirsch, one for $1000, due March 1, 1885, and three for $1333 each, due March 1, 1886, 1887 and 1888, and each bearing interest at six per cent per annum, and to secure the payment thereof executed to Julius Rosenthal a deed of trust on the real estate sold, containing a clause authorizing the holder of all such notes to declare them due in default of payment of any one thereof, or of the interest thereon. At the time of such sale, and as part of the transaction, the policies of insurance in question were assigned to Frances T. Race, with the consent and approval of the insurance companies. Before these policies were delivered to Miss Race, Rosenthal, trustee, sent the policies to the offices of the insurers to procure consent to such assignment, and also to procure the insertion therein of the mortgage clause hereinafter mentioned. The direction was given by Rosenthal in the presence of appellee, Race, and the policies were delivered to Rosenthal by the direction of appellee, Race.

The mortgage clause inserted in the policy of the Traders' Insurance Company, and made part thereof, is as follows:

"Loss (if any) payable to Julius Rosenthal, trustee, as hereinafter provided, it being hereby understood and agreed that this insurance, as to the interest of the mortgagee or trustee, only, therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the

occupation of the premises for purposes more hazardous than are permitted by the terms of this policy: *Provided,* that in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then, on demand, the mortgagee or trustee shall pay the same.    *    *    *    It is also agreed, that whenever this company shall pay the mortgagee or trustee any sum for loss under this policy, and shall claim that as to the mortgagor or owner no liability therefor existed, it shall at once, and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made, under any and all securities held by such party for the payment of said debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured; or said company may, at its option, pay the said mortgagee or trustee the whole debt so secured, with all the interest which may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made, an assignment and transfer of said debt, with all securities held by said party for the payment thereof.

"This slip being attached to policy No. 28,276 of the Traders' Insurance Company of Chicago, Ill., forms part of said policy.

"Dated July 10, 1884.        S. A. ROTHERMEL, *Asst. Sec.*"

A like clause, in effect, was inserted in the other policy. The dwelling house, with part of the furniture therein, was destroyed by fire May 5, 1885. The insurance companies claiming that the policies were void as to the owner, Miss Race, because the building had ceased to be occupied as a dwelling house before and at the time of its destruction, paid to Rosenthal, trustee, the amount due on said notes, May 25, 1885, the amount then being, $4840, and that by reason thereof they became entitled to be subrogated to the rights of the mortgagee. The trustee, on such payment being made, assigned and delivered the notes and trust deed to the Traders'

Insurance Company, whereupon demand was made for the payment of the note then past due, and on failure to pay the same, said company declared all of the notes due, and on June 20, 1885, filed this bill in the Superior Court of Cook county, against Frances T. Race, to foreclose said deed of trust. The Agricultural Insurance Company, July 9, 1885, interpleaded, and filed its cross-bill, claiming to have joined the other insurance company in the payment to Rosenthal, and claiming the same right and asking the same relief. On the 27th of July, 1885, Frances T. Race brought an action at law upon the policy against the Traders' Insurance Company in the State courts, and against the Agricultural Insurance Company in the Circuit Court of the United States upon its policy. Upon supplemental bill filed, the prosecution of these suits at law was enjoined. On the hearing the Superior Court found that the policies had severally been forfeited under the non-occupation clause, and entered a decree in accordance with the prayer of the bill. On appeal the Appellate Court reversed the decree of the Superior Court, and dismissed the several bills for want of equitable jurisdiction, and the case is brought to this court on appeal of the insurance companies.

Mr. D. J. SCHUYLER, and Mr. ELBERT H. GARY, for the appellants:

The meaning of the clauses against non-occupancy is, that the house must have been actually occupied as a dwelling house at the time of the fire, by some one living in it. A mere supervision over it was not sufficient. *Paine* v. *Insurance Co.* 5 T. & C. (N. Y.) 619; *Insurance Co.* v. *Padfield,* 78 Ill. 167; *Keith* v. *Insurance Co.* 10 Allen, 228; *Harrison* v. *Insurance Co.* 9 id. 231; *Ashworth* v. *Insurance Co.* 112 Mass. 422; *Reed* v. *Insurance Co.* 90 N. Y. 382; *Carrigan* v. *Insurance Co.* 122 Mass. 298; *Litch* v. *Insurance Co.* 136 id. 491; *Bennett* v. *Insurance Co.* 50 Conn. 470; 51 id. 817; *Lockwood* v. *Insurance Co.* 47 id. 553; *Alston* v. *Insurance Co.* 80 N. C.

326; *Insurance Co.* v. *Meyer,* 63 Ind. 238; *Hermann* v. *Insurance Co.* 85 N. Y. 162; *Cook* v. *Insurance Co.* 70 Mo. 610; *Poor* v. *Insurance Co.* 125 Mass. 274; *Fitzgerald* v. *Insurance Co.* 64 Wis. 463; *McClure* v. *Insurance Co.* 90 Penn. St. 277; *Ridge* v. *Insurance Co.* 9 Lea, 597; Wood on Fire Insurance, (2d ed.) 209; *Insurance Co.* v. *Frith,* 22 Brad. 593; *Sexton* v. *Insurance Co.*69 Iowa, 99.

The mortgage clause was a contract which the insurers could lawfully make with the mortgagee, and was binding upon appellee, the same as any other conditions contained in the policies.   *Savings Institute* v. *Leake,* 73 N. Y. 162; *Hastings* v. *Insurance Co.* id. 141; *Insurance Co.* v. *Insurance Co.* 55 id. 343; *Insurance Co.* v. *Allen,* 43 id. 392; *Allen* v. *Insurance Co.* 132 Mass. 480; *Thornton* v. *Insurance Co.* 71. Pa. St. 234; *Davis* v. *Insurance Co.* 10 Allen, 113; *Foster* v. *Van-Reid,* 70 N. Y. 20; *King* v. *Insurance Co.* 70 Cush. 1; *Honore* v. *Insurance Co.* 51 Ill. 409; *Insurance Co.* v. *Floyd,* 19 Hun, 287; *Insurance Co.* v. *Olcott,* 97 Ill. 439.

Mr. ROBT. RAE, and Mr. DAVID S. PRIDE, for the appellee :

The burden of proof is on the insurance company to show vacancy or unoccupancy.   *Burdell* v. *Insurance Co.*.51 Conn. 504.

As to what constitutes vacancy or unoccupancy, see *Insurance Co.* v. *Tucker,* 92 Ill. 64; *Whitney* v. *Insurance Co.* 72 N. Y. 117; *Insurance Co.* v. *Mason,* 5 Bradw. 147; *Insurance Co.* v. *Zaenger,* 63 Ill. 465; *Edely* v. *Insurance Co.* 70 Iowa, 472; *Shackelton* v. *Insurance Co.* 55 Mich. 288; *Litch* v. *Insurance Co.* 136 Mass. 491.

Per CURIAM: The question whether appellants were entitled to subrogation to the rights of the mortgagee in the notes and mortgage mentioned, and to foreclose the mortgage, was one of equitable cognizance.   Their right to pursue the remedies for the foreclosure of the mortgage, vested by that instrument

in the mortgagee, could not be determined except in a court of equity, and that court having jurisdiction of the subject matter, had the power to determine all incidental questions affecting the right claimed.

If the contract of insurance was for the indemnity of the mortgagor as well as the mortgagee, the right of subrogation depends in this case upon the question whether the policies have been forfeited for the breach of the conditions therein. As originally issued, the policies were payable to Mrs. Hirsch, as owner, and contained clauses of forfeiture if the building became vacant and unoccupied as a dwelling house without notice to and consent in writing by the insurance companies. When the property was sold the policies were assigned to the purchaser with the consent of appellant companies, and a mortgage clause inserted to cover the interest of Mrs. Hirsch, as mortgagee. The interest of Hirsch was $5000, being $1000 less than the face of the policies. Appellee's agent consented to the assignment to Rosenthal, trustee, to whom the loss if any, was to be paid. The effect of this change in the policies was to create a contract at variance with the original policies in this: that the interest of Mrs. Hirsch, as mortgagee, whatever it might be, was insured, while the residue of the policies stood as indemnity against loss by appellee. Under the policies the companies, in case of loss, obligated themselves to pay to the trustee, for the benefit of Mrs. Hirsch, a sum not exceeding the amount due under her mortgage, and the balance to the mortgagor. The contract as to the mortgagee was freed from the forfeiture clause,—that is, from the condition providing that the policies should be void while the property remained unoccupied,—which was, however, continued in force as respected the interest of the mortgagor. The insurance to be paid, except as to the interest of Mrs. Hirsch, was still liable to forfeiture under this non-occupation clause. The language of the mortgage clause inserted, that "this insurance, as to the interest of the mortgagee or trustee, only, therein, shall not be

invalidated by any act or neglect of the mortgagor or owner," clearly indicates that the insurance was not kept in force for the mortgagee's interest, only, but that it was intended to keep it in force, according to its original terms, for the benefit of the owner, to whom the policies had been assigned, with the consent of the insurance companies. The effect of the mortgage clause inserted was to take the mortgagee's interest out of the clause of forfeiture for non-occupancy, etc., and leave the policy in force covering the interest of the mortgagor, subject, however, to that clause. The mortgagor had, therefore, an interest in the policies, first, that her debt be paid in case of total loss, and she thereby relieved from liability therefor; and second, to have the balance due under the policies paid to her, if they continued in force at the time of loss.

As we have seen, the interest of Race was liable to forfeiture for breach of the conditions of the policies, and if such forfeiture was incurred, appellants had the right, on paying the mortgage debt, to be subrogated to the mortgagee's right, as against the mortgagor. In such case, the notes and mortgage would rightfully be assigned to appellants, and they be entitled to foreclose the same. The mortgage clause, however, provides, that in case of loss under such circumstances as that appellants shall deny their liability to the mortgagor, they may pay to the mortgagee the sum due under the mortgage, and become entitled to an assignment of the mortgage debt and all securities therefor. The right to subrogation, however, can not be said to depend upon the naked claim of appellants that there is no liability on the policies to appellee, but the facts must warrant such claim. The claim, to entitle them to an assignment and subrogation, must be made in good faith, and be based upon a state of facts which, under the contract of insurance, would entitle them to exemption from liability. The rights of a party insured can not be made to depend upon the arbitrary claim of the insurer. *Van Arman*

v. *Byington,* 38 Ill. 443; *Furlong* v. *Cox,* 77 id. 293; *Davenport* v. *Ledger,* 80 id. 574.

Assuming, then, that equity has jurisdiction to enforce the contract of subrogation and to foreclose the mortgage, it must, as incidental to that jurisdiction, have jurisdiction to pass upon all questions upon which that jurisdiction depends. Proof of the destruction of the property, and of the amount of the loss, fixed the liability of appellants to the mortgagee. But to entitle appellants to be subrogated to the rights of the mortgagee and to foreclose the mortgage, the burden is upon them to prove that the loss occurred under circumstances exempting appellants from liability to appellee for the loss of the property, for, appellants being liable to pay the mortgagee as well where they are liable by virtue of the terms of their original contracts of insurance as where they are only liable by virtue of their enlargement of those contracts by their contracts with the mortgagee, it is impossible that it can be inferred, from the mere fact of paying, that appellants were liable to pay upon the one ground rather than upon the other. Moreover, since appellants seek relief in a court of equity, rather than in a court of law, where appellee would be entitled to have the questions of fact passed upon by a jury, the evidence to be considered and the relief that shall thereupon be granted must be such as are within the principles applied in courts of equity. One of those principles is, a court of equity will never enforce either a penalty or a forfeiture. (2 Story's Eq. sec. 1319; 1 Pomeroy's Eq. secs. 459, 460.) And so it must follow, here, that to entitle appellants to the relief they claim, they must prove, not merely that the premises were vacant or unoccupied at or before the time the fire occurred which destroyed the insured property, but that such vacancy or unoccupancy contributed, in some degree, to the causing of that fire or the prevention of its extinguishment, for if the causation and the control of the fire were unaffected by the fact of vacancy or unoccupancy, to allow appellants to avoid

liability, and recover what they have paid on account of the insurance, by a foreclosure of this mortgage, would, in effect, be to enforce a forfeiture,—decree a recovery on a mere technical legal breach of a contract. The evidence wholly fails to show that the property would not have been destroyed precisely as it was if a family had been residing in the house at the time. The brother and sister of appellee were in the house when the fire which destroyed it, began. Fires had been lighted for legitimate purposes, such as they would, presumably, have been lighted for by a family residing therein, in grates and stoves, some hours before the destruction of the property, and, so far as we are authorized to infer anything in that respect from the evidence, every care was observed that would have been observed by a family residing in the house at the time.

It is insisted in argument by counsel for appellants, that the fact that the house had not been continuously occupied for some time ·before its destruction by a family residing in the house, rendered the flues less secure, and increased the danger arising from their use on the day the fire occurred. We have been unable to find any evidence in the record sustaining this contention, and we are unable to assert it as a fact within judicial cognizance.

. It follows, therefore, that we are of opinion that the evidence did not warrant a decree of forfeiture of the policies, and that appellee had a right to have the mortgage debt paid for her benefit, and to be paid the balance, if any, of the insurance money to herself. The payment of the mortgage, being for her benefit, operated as a satisfaction and extinguishment of her debt, and the insurance companies acquired no right to enforce the same as against her. By such payment to the trustee, Rosenthal, appellants discharged their obligation *pro tanto* under the policies, and are entitled to credit for the sum so paid, and are liable to her for the balance, if any, remaining unpaid.

We are of opinion that the judgment of the Appellate Court dismissing the bills was correct, although we are not prepared to agree with that court in the ground upon which its judgment was based. Appellee not having filed a cross-bill, no affirmative relief can be granted her in this proceeding. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*