United Firemen's Insurance Company, Appellant, *v.* Registrar of Property of Aguadilla, Respondent.

No. 887. Submitted March 6, 1933.—Decided March 28, 1933.

*J. Henri Brown, C. Ruiz Nazario, G. E. González,* and *G. Benítez Gautier* for appellant. The registrar appeared by brief.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

On March 4, 1931, René de Courceuil and his wife, Cándida López Quintana, executed a voluntary mortgage in favor of Teresa Enriqueta Santiago Oppenheimer, to secure a loan of $18,000, plus a $2,000 credit for interest, another $1,000 for costs, expenses, and attorney's fees, and $100 estimated to cover any sum that the creditor might have to pay for insurance premiums in the event that the debtor should fail to do so. The mortgage was constituted on six properties, one of which was designated as No. 3 and consisted of a parcel of 33.60 acres (*cuerdas*) on which there were two buildings: one a two-story house, and the other a one-story house.

The mortgage responsibility was distributed among the burdened properties, and an encumbrance of $9,100, which included principal, interest, costs, and insurance premiums, was assigned to the above-mentioned parcel.

The debtor agrees to insure the two-story house standing on said parcel against fire and to endorse the policy in favor of the creditor, in order that the latter might collect in case of loss and apply the proceeds to the mortgage debt, said debtor binding himself to pay the insurance premiums punctually. Pursuant to that agreement, the debtor, René de Courceuil, obtained a policy from the appellant United Firemen's Insurance Company, whereby the said house was insured against fire for the sum of $3,000 and the furniture in it for $1,000. The policy thus issued to the mortgagor contained the following stipulations:

"Loss or damage, if any, under this policy, shall be payable to George Oppenheimer as guardian of (como Tutor de) Teresa Enriqueta Santiago Oppenheimer, as mortgagee (or Trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or Trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or Trustee) shall, on demand, pay the same.

"Provided also, that the mortgagee (or Trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that,

as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount claimed.''

The house was destroyed by fire. The appellant claimed that it was not liable to the insured by reason of said fire, and paid Miss Santiago Oppenheimer the sum of $2,966.18 to cover the loss caused by the fire; and said mortgagee in a public deed executed on November 3, 1932, before Notary Francisco Parra Capó, acknowledged the receipt of said sum from the appellant, and subrogated the latter to all the rights, actions, and privileges that she had, or might have had, under the terms of the mortgage contract made with the debtor, René de Courceuil and his wife, Cándida López Quintana, said insurance company thereby being placed without limitation in the same position, degree, and priority, as to said sum, that Miss Santiago Oppenheimer had enjoyed until then.

On December 30, 1932, there was presented to the Registrar of Property of Aguadilla for record, a certified copy of the deed of subrogation, together with a certified copy of another deed wherein it was set forth that the appellant accepted the partial assignment of the mortgage credit and the subrogation of rights, there being attached to said document, another certified copy of a power of attorney executed before Notary Francisco Parra Capó by the creditor, Teresa Enriqueta Santiago Oppenheimer, in favor of Jorge Oppenheimer Dalmau, who executed the deed of subrogation in the name of his principal. There was also presented a certificate showing the record of the guardianship of Teresa Enriqueta Santiago Oppenheimer in favor of Jorge Oppenheimer Dal-

mau, and another certificate showing the emancipation of that ward. The registrar of property refused to record the said documents in a decision which reads as follows:

"The record of this document is denied because, according to section 2 of the Mortgage Law and the corresponding section of the Regulations, the same is not recordable, and instead a cautionary notice of the right of subrogation is entered in favor of the United Firemen's Insurance Company for 120 days."

The registrar states that he has reached the conclusion that the documents presented to him cannot be recorded because they do not refer to recordable acts, contracts, documents, or titles, but rather to a subrogation of personal rights.

We have seen that the mortgagor agreed to insure the mortgaged property and to indorse the policy over to the mortgagee, in order that the latter might collect, in case of fire, the amount of the insurance and apply it to the mortgage debt. We have also seen that the parties to the mortgage contract agreed that the insurance company would be subrogated to the rights of the mortgagee in case that there should be a loss and the company should be obliged to pay the amount of the insurance to said mortgagee while claiming that it was not liable for such payment to the mortgagor or owner.

According to section 152 of the Mortgage Law, a mortgage credit may be conveyed or assigned to a third person in whole or in part, provided that it be effected by means of a public instrument, notice of which is given to the debtor, and that it be recorded in the registry. The respondent argues that the subrogation contained in the documents presented for record does not constitute a partial assignment of the mortgage credit as regards the amount paid by the appellant, but rather a personal subrogation as has already been stated. In order to justify his refusal, the registrar analyzes the difference in meaning between the legal terms "assignment" and "subrogation." We agree with the re-

spondent that there is a difference between both terms, which have, however, a rather pronounced coincidental relationship; but we do not agree that these differences can affect the rights acquired by an assignee or by a subrogated party, in respect to the record in the registry of property. In both instances a transfer of rights is effected, and the transfer of a mortgage credit recorded in the registry is a sufficient basis for the subrogated party to resort to the provisions of section 152 of the Mortgage Law.

"Subrogation," says Scaevola at page 1046 of volume 19 of his Commentaries on the Civil Code, "is the substitution of one creditor for another as a consequence of the payment of the debt. In this it differs from an assignment because, although some authors consider these two terms as synonymous, it is clear that their relationship is not one of similarity but of concurrence, and is comparable to that existing between two overlapping circles, for although they have different sources and different centers, they occupy in part the same space; and thus if subrogation arises from a payment, it becomes after all an assignment of rights, just as an assignment, which is in itself independent of a subrogation, has in its turn the natural effect of transferring to the assignee all the assignor's rights as against the debtor."

Now, then, in order that the subrogation may be effective, is it sufficient that the amount of the loss has been paid to Miss Oppenheimer and that the insurance company has claimed that it is not liable to the mortgagor?

The clause which was inserted in the insurance contract and which is known as the "standard mortgage clause," says in its last paragraph that whenever the company shall have paid the mortgagee any sum for loss or damage and shall have claimed that, as to the mortgagor or owner, no liability therefor existed, said company shall, to the extent of such payment, be subrogated to all the rights of the said mortgagee under all securities held as collateral to the mortgage debt.

In the instant case the insurance company claimed that no liability existed as to the mortgagor, and Miss Oppenheimer executed a deed of subrogation in favor of said company covering the sum that was paid to her as insurance.

Clauses similar to the one now before us have been construed by the courts in the sense that subrogation will not take effect on the mere claim or assertion that the insurance company is not liable to the mortgagor.

In *Traders' Ins. Co. et al.* v. *Race,* 142 Ill. 338, 31 N. E. 392, the court had under consideration a clause similar to the one we are now discussing. It is not necessary to give a detailed account of the facts that formed the basis of the opinion delivered by the court. It suffices to say that the principles stated in said opinion are perfectly applicable in the present case. The right to subrogate, according to the Court of Illinois, cannot be said to depend upon the naked claim that there is no liability on the policies, but the facts must warrant such claim. "The claim, to entitle them to an assignment and subrogation," says the court, "must be made in good faith, and be based upon a state of facts which, under the contract of insurance, would entitle them to exemption from liability. The rights of a party insured can not be made to depend upon the arbitrary claim of the insurer."

The court goes on to say that the burden is upon the company to prove that the loss occurred under circumstances exempting it from liability to the debtor.

In *Sun Ins. Office of London* v. *Heiderer,* 99 Pac. 39, the Supreme Court of Colorado said:

"It will be seen that the answer does not contain any defense to this action based upon the ground that Rosenthal had violated any of the conditions of the policy, or set out the facts upon which the appellant predicated its claim that no liability existed in his favor. It admits, as averred in the complaint, that it did claim that as to Rosenthal no liability existed under the policy, and thereupon demanded that the appellee should assign to it an interest in her mortgage before it would pay to her the amount of the loss, and that

appellee, in order to secure such payment, executed and delivered an assignment of an interest in her mortgage to the extent of such payment. The theory of the defense to the action is that appellant, having paid the amount of the loss under the policy to the mortgagee, as it was bound to do by the express terms of the mortgage clause, and that having, as therein provided, claimed at the time of such payment that no liability therefor existed as to the mortgagor, it became legally subrogated to the extent of such payment to the rights of the mortgagee; in other words, the appellant predicates its rights to subrogation upon the bare statement that it claimed that there was no liability on the part of the company to the insured, without alleging any facts which, under the terms of the policy, would exempt it therefrom. By the contract of insurance Rosenthal was entitled to indemnity as well as the mortgagee; and, while the loss was to be paid to her, such payment would inure to his benefit by reducing to that extent his mortgage indebtedness. Before he can be deprived of such benefit, it must be shown that he has violated the provisions of the policy in some particular that renders it void as to him. His rights do not depend upon the mere claim of the insured. The appellant, therefore, to avail itself of the right to be subrogated to the rights of the mortgagee, instead of applying the payment of the loss toward the satisfaction of the mortgage, must allege and prove a state of facts which, under the contract of insurance, would entitle it to exemption from liability to the mortgagor.''

In *Loewenstein* v. *Queen Ins. Co.*, 227 Mo. 100, 117 S. W. 72, the Supreme Court of Missouri, in construing a clause identical to that which forms part of the insurance contract now under consideration, expressed itself as follows:

''Whilst the terms 'subrogation' and 'assignment' are both used in the mortgage clauses of these two policies, yet so far as the term 'subrogation' is concerned its effect is nothing, unless under the facts of the case equity would give a subrogation without the contract, but assignment is different, it stands on contract. The insurance companies in this case, as shown by their briefs, are both relying solely on the contract contained in the mortgagee clause of the policies; we do not understand that, independent of the contract, they claim to be the equitable owners of this mortgage debt and deed of trust, and if they should make such a claim we see nothing in the facts of the case to support it. Let us consider the contract. We have already mentioned that class of contracts where the mortgagee on

his own account and at his own expense takes insurance on the mortgaged property for his own protection. There is nothing of that kind in this case and cases in the books discussing the relative rights of parties to such a contract are of no assistance to us in this inquiry. But here we have a contract wherein it is provided that if the insurer pay the mortgagee 'and shall claim that, as to the mortgagor or owner, no liability therefor existed' then the insurer shall be subrogated to all the rights of the mortgagee and the latter shall assign the notes and deed of trust to the insurance company. The language there employed is peculiar; literally it means that when the company pays the debt if it should claim that it is not liable to the mortgagor, then it is not liable. It has been said in support of such a clause that it does not mean, that a mere claim by the insurance company that it is not liable will be sufficient to support the claim for subrogation, but that it must be a reasonable claim. But even that qualification would not give validity to such a claim, because a claim might have some plausible or reasonable appearance yet fall short of legal justification. In Richards' Ins. Law (3 Ed.), page 400, it is said: 'Despite the phraseology of this clause, however, the company's right to realize under subrogation depends, not upon its claim that the policy is avoided as to the mortgagor, but upon proof that it is so.' The insurance company cannot rest upon its claim that the policy is forfeited or upon a showing that there was reasonable grounds to believe it was so, but only upon the fact that it was so. An insurance company really does not put itself in a position to appeal to the court's sense of justice when it utters its policy framed in such unfair language. Insurance policies are not drawn by men unlearned in the meaning of language or unlearned in the law of insurance. The clause in question is called in the briefs before us and in the law books the 'standard mortgagee clause,' by which we infer that it is a clause in general use in first class insurance companies, and that they mean what they say, that is, that they are not liable if they claim they are not liable. If that is so then it is an agreement to make the insurance company a judge in its own case, which is so unreasonable that no court ought to enforce it. If on the contrary it means what the learned law-writer last above quoted says it means, that is, that it is proof of the fact and not mere claim of the fact that will exonerate the insurer, then the clause has reason and justice to rest upon. But if that is the correct interpretation then the words, 'and shall claim that, as to the mortgagor or owner, no liability therefor existed,' are unneces-

sary, because if the mortgagor had really forfeited right the law would adjudge the company not liable to him beyond its obligation to pay the mortgage debt even in the absence of those words in the contract.''

In *O'Neil* v. *Franklin Fire Insurance Co.,* 159 App. Div. 313, affirmed by the New York Court of Appeals, the insurance company tendered the mortgagee, Crimmins, the full amount unpaid upon his mortgage and, claiming that no liability existed as to the debtor, it demanded an assignment and transfer of the mortgage which it could not obtain because said creditor refused to give it. Under the policy, the loss, if any, was made payable to the mortgagee, and the debtor, Mollie O'Neil, was bound to pay the premiums. The language of the contract construed by the court is identical to that used in the policy issued by the appellant. From the opinion of the court in that case we excerpt the following:

'' . . . The insurance payable to Crimmins as mortgagee was not only for his benefit but for the benefit of the owner, who had the right to have such payment applied in reduction of the mortgage debt. Hence, it would be unjust and not according to the intention of the parties that the insurance company should, upon payment to Crimmins, be subrogated to his position as holder of the mortgage, and thereby deprive the owner of the benefit of that part of the insurance money, unless the owner had in some way forfeited her right. The answer of the insurance company does not set up any breach of the contract of insurance upon the part of plaintiff, Mrs. O'Neil, or that her right under the policy has been in any way forfeited, nor does it allege that as to plaintiff no liability under the policy exists. The contract to sell the farm did not avoid the policy. But assuming that notwithstanding the form of its answer, the insurance company may still assert and prove any defense which is available to it as against defendant Crimmins, we are of opinion that it was incumbent upon defendant insurance company to prove upon the trial that as to the plaintiff, mortgagor and owner, no liability existed against it. The contract as contained in the mortgagee clause is: 'Whenever this company shall pay the mortgagee . . . . any sum for loss or damages under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this com-

pany shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt. or may at its option pay to the mortgagee . . . the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee . . . to recover the full amount of his claim.'

"It is true that defendant insurance company did by written notice served upon defendant Crimmins claim that as to the mortgagor no liability existed against it, but it did not prove upon the trial that it was not liable to the mortgagor. On the contrary, before the trial, it made an offer of judgment to plaintiff, which plaintiff accepted, thus conceding a liability to plaintiff under the policy. This clause should not be construed to vest in the insurance company the right to subrogation upon the mere assertion of claim, unfounded in fact, and such was not the intent or purpose of the clause in question. The claim which it may assert must be a valid and well-founded claim, and so it has been held in construing mortgagee clauses identical with this. (*Traders' Insurance Co.* v. *Race,* 142 Ill. 338; *Anderson* v. *Saugeen Mut. Fire Ins. Co.,* 18 Ont. 355; *Bull* v. *North British Canadian Investment Co. & Imperial Fire Ins. Co.,* 15 Ont. App. 421; affd., *sub nom. Imperial Fire Ins. Co.* v. *Bull,* 18 Canada Sup. Ct. 697.) In the last case it was held that the insurance company was not justified in paying the mortgagees and claiming subrogation without first contesting its liability to the mortgagor and establishing their indemnity from liability to him.

"As the defendant insurance company failed to prove upon the trial that as to plaintiff no liability existed under the policy, it has failed to establish its right to subrogation in this action."

In the instant case it cannot be said that a right which is recordable in the registry of property has been transferred. The claim was made that the insurance company was not liable to the mortgagor; but the assertion of that fact is not the fact itself on which the right to subrogation depended. The mere assertion by the company is not sufficient to determine the existence of the fact. It is necessary to prove it, and the burden of proof rests on the company. If the subrogation had been recorded, the subrogated company could

institute a foreclosure proceeding against the debtor, who, in order to defend his rights, would have to resort to an ordinary action against the company despite the fact that it is incumbent on the latter to prove its exemption from liability to the debtor. It is possible that the claim of the company to exemption from liability to the debtor might be overcome by the evidence introduced in the plenary action, and then a transfer of a right having no legal existence would have been recorded and the subrogated party would have been permitted to enforce, by means of a summary proceeding, a right that never existed.

The decision appealed from must be affirmed.

Mr. Justice Wolf dissented.