UNITED FIREMEN'S INSURANCE COMPANY, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE AGUADILLA, recurrido.

No. 887.—*Sometido:* Marzo 6, 1933. *Resuelto:* Marzo 28, 1933.

*J. Henri Brown, C. Ruiz Nazario, G. E. González* y *G. Benítez Gautier,* abogados de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En 4 de marzo de 1931, don René de Courceuil y su esposa Cándida López Quintana constituyeron hipoteca voluntaria a favor de la Srta. Teresa Enriqueta Santiago Oppenheimer para garantizar un préstamo de $18,000, más $2,000 de un crédito para intereses, otros $1,000 para costas, gastos y honorarios de abogado, y $100 calculados para responder de cualquier suma que tuviere que pagar la acreedora por concepto de primas de seguro en caso de no hacerlo el deudor. La hipoteca se constituyó sobre seis fincas, constando una de ellas, que se designó con el No. 3, de treinta y tres cuerdas sesenta céntimos de terreno, con dos casas enclavadas en la misma, una de altos y bajos y otra terrera.

La responsabilidad hipotecaria fué distribuída entre las fincas gravadas, asignándose a la referida finca un gravamen que entre principal, intereses, costas y primas de seguro, ascendía a la suma de $9,100.

Convino el deudor en asegurar contra incendio la casa residencia de altos y bajos existente en la finca mencionada y en endosar la póliza a la acreedora, para que en caso de siniestro pudiese cobrar su importe y abonarlo a lo que se adeudara, obligándose dicho deudor a pagar puntualmente la prima de dicho seguro. Conforme a lo convenido, el deudor don René de Courceuil, obtuvo de la recurrente United Firemen's Insurance Company una póliza mediante la cual se aseguró contra incendio la referida casa por la suma de $3,000, y el mobiliario existente en la misma por $1,000. En esta póliza, procurada por el deudor hipotecario, se convino lo siguiente:

"Si hubiere pérdidas ó daños bajo esta póliza, serán pagaderos a George Oppenheimer, tutor de Teresa Enriqueta Santiago Oppenheimer, como acreedor hipotecario (o síndico); y es convenido que este seguro, en cuanto al interés de dicho acreedor hipotecario (o síndico) únicamente, no será invalidado por ningún acto o negligencia del deudor hipotecario o dueño de la propiedad aquí descrita, ni por ejecución u otros procedimientos o notificación de subasta relativa a la propiedad, ni por cualquier traspaso de dominio del título sobre dicha propiedad, ni por ocupación de la propiedad para fines

más peligrosos que los permitidos por esta póliza; *Entendiéndose,* que en el caso de que el dueño o deudor hipotecario dejare de pagar cualquier premio adeudado sobre esta póliza, el acreedor hiptecario (o síndico) efectuará tal pago, al serle exigido.

*"Entendiéndose además,* que el acreedor hipotecario (o síndico) dará aviso a esta Compañía de cualquier cambio de dueño o de ocupación del riesgo, o aumento de riesgo, del cual tuviere conocimiento, y que, a menos que estuviere ya permitido en la póliza, será endosado sobre la misma y el acreedor hipotecario (o síndico) pagará, al serle exigido, el premio adicional por tal aumento de riesgo, por el tiempo que subsista. De lo contrario esta póliza quedará nula y sin valor.

"Esta compañía se reserva el derecho de cancelar esta póliza en cualquier tiempo, según se estipula en la misma, pero en tal caso, esta póliza continuará en vigor a favor del acreedor hipotecario (o síndico) mencionado, únicamente, durante diez días subsiguientes a la fecha de notificación de cancelación al acreedor hipotecario (o síndico) citado, y esta Compañía tendrá derecho, al dar tal aviso, de cancelar este convenio.

"Si en cualquier tiempo esta Compañía pagare al dicho acreedor hipotecario (o síndico) cualquier suma por pérdida o daño bajo esta póliza y alegare que en cuanto al deudor hipotecario o dueño no exista responsabilidad por parte de la Compañía para tal pago, quedará inmediatamente subrogada la Compañía en todos los derechos de la parte a la cual se hizo el pago, bajo todas las garantías que tuviere como subsidiarias a la deuda hipotecaria, o puede, a su opción, pagar al acreedor hipotecario (o síndico) el importe total vencido o próximo a vencer por concepto de la hipoteca, más intereses, y en su consecuencia recibirá una cesión y traspaso en pleno de la hipoteca y de cualesquiera otras garantías; pero ninguna subrogación así hecha menoscabará el derecho del acreedor hipotecario (o síndico) citado, de recobrar el total de su crédito.''

La casa fué destruída por un incendio. La recurrente alegó que no tenía responsabilidad alguna para con el asegurado en virtud de dicho incendio, satisfizo a la Srta. Santiago Oppenheimer la cantidad de $2,966.18 como importe de la pérdida ocasionada por el siniestro, y dicha acreedora, en escritura pública otorgada ante el notario Francisco Parra Capó en 3 de noviembre de 1932, confesó haber recibido de la recurrente la mencionada cantidad, y subrogó a la recurrente en todos los derechos, acciones y privilegios que la

acreedora tuviera o hubiera podido tener, bajo los términos del contrato de hipoteca llevado a cabo con el deudor René de Courceuil y su esposa Cándida López Quintana, quedando colocada dicha compañía aseguradora, con respecto a la referida suma, en el mismo lugar, grado y prelación que de acuerdo con dicho contrato de hipoteca había venido hasta entonces ocupando la Srta. Santiago Oppenheimer, sin limitación de índole alguna.

En 30 de diciembre de 1932, se presentó al Registrador de la Propiedad de Aguadilla para su inscripción una copia certificada de la escritura de subrogación, conjuntamente con una copia certificada de otra escritura en que se hace constar que la recurrente aceptó la cesión parcial del crédito hipotecario y subrogación de derechos, uniéndose a dicho documento otra copia certificada de una escritura otorgada ante el notario Francisco Parra Capó sobre poder, conferido por la acreedora Teresa Enriqueta Santiago Oppenheimer a favor de don Jorge Oppenheimer Dalmau, quien a nombre de dicha señorita otorgó la escritura de subrogación. También se presentó una certificación creditiva de la inscripción de la tutela de Teresa Enriqueta Santiago Oppenheimer a favor de don Jorge Oppenheimer Dalmau, y otra certificación sobre emancipación de la referida señorita. El registrador de la propiedad denegó la inscripción de dichos documentos en una nota que dice así:

"Denegada la inscripción solicitada en este documento por no ser éste de los documentos que son inscribibles de acuerdo con el artículo dos de la ley hipotecaria y su concordante del Reglamento, tomándose en su lugar anotación preventiva por ciento veinte días a favor de la United Firemen's Insurance Company, de su derecho de subrogación."

Alega el registrador recurrido que ha llegado a la conclusión de que los documentos que le fueron presentados no pueden inscribirse, por no referirse a actos o contratos, documentos y títulos inscribibles, y sí más bien a subrogación de derechos personales.

Hemos visto que el deudor hipotecario convino en asegurar la finca hipotecada y en endosar la póliza a la acreedora hipotecaria para que ésta, en caso de siniestro, cobrase su importe y lo abonase a su crédito. Hemos visto también que se aceptó por las partes que intervinieron en el contrato de hipoteca que la compañía aseguradora subrogaría a la acreedora hipotecaria en caso de que ocurriese un siniestro y se viese obligada a satisfacer a dicha acreedora el importe del seguro y se alegare por la compañía que no existe responsabilidad para tal pago en cuanto al deudor hipotecario o dueño.

Según el artículo 152 de la Ley Hipotecaria el crédito hipotecario puede enajenarse o cederse a un tercero en todo o en parte, siempre que se haga en escritura pública de que se dé conocimiento al deudor y que se inscriba en el registro. El Registrador recurrido arguye que la subrogación contenida en los documentos presentados para su inscripción no constituye una cesión parcial del crédito hipotecario en cuanto a la suma satisfecha por la recurrente, y sí más bien una subrogación personal, como ya se ha dicho anteriormente. El Registrador, para justificar su negativa, analiza las diferencias que existen entre la significación legal de las palabras "cesión" y "subrogación". Opinamos con la parte recurrida que existen algunas diferencias entre ambos términos, que tienen sin embargo una relación de coincidencia bastante acentuada; pero no estamos de acuerdo en que estas diferencias puedan afectar los derechos adquiridos por un cesionario o un subrogado en lo que respecta a la inscripción en el Registro de la Propiedad. En ambos casos se efectúa una trasmisión de derechos y la trasmisión de un crédito hipotecario inscrito en el Registro es bastante para que la parte subrogada pueda acogerse a las disposiciones del artículo 152 de la Ley Hipotecaria.

"Subrogación", dice Scaevola en el tomo 19, página 1046 de sus "Comentarios al Código Civil", "es la sustitución de un acreedor por otro como consecuencia del pago de la deuda.

En esto se diferencia de la cesión, pues aunque algunos autores llegan a considerar sinónimos estos dos términos, es indudable que su relación no es de semejanza, sino de coincidencia, pudiendo ser equiparada a la que tiene entre sí las circunferencias secantes, puesto que obedeciendo a distinto motivo, teniendo un centro diferente, ocupan en parte el mismo espacio; y así, si la subrogación procede del pago, al fin y al cabo se traduce en una cesión de derechos, como la cesión, en sí misma independiente de la subrogación, tiene a su vez el efecto natural de traspasar al cesionario cuantos derechos corresponden al cedente contra el deudor.''

Ahora bien, ¿basta para que tenga efecto la subrogación que se haya pagado el importe de las pérdidas a la Srta. Oppenheimer y que la compañía aseguradora haya alegado que no tiene responsabilidad para con el deudor hipotecario?

La cláusula inserta en el contrato de seguro, que se designa con el nombre de *"standard mortgage clause"*, dice en su último párrafo que cuando la compañía pague al acreedor hipotecario cualquier suma por pérdida o daño, y alegue (*claim*) que en cuanto al deudor hipotecario o dueño no existe responsabilidad por parte de la compañía, ésta quedará completamente subrogada en todos los derechos del referido acreedor hipotecario contra todas las garantías colaterales que tuviese para el pago de la deuda hipotecaria.

En el presente caso la compañía aseguradora alegó no tener responsabilidad alguna para con el deudor hipotecario, y la Srta. Oppenheimer otorgó escritura de subrogación a favor de dicha compañía por la cantidad que le fué satisfecha como importe del seguro.

Cláusulas similares a la que.en estos momentos nos ocupa han sido interpretadas por los tribunales en el sentido de que no basta para que tenga efecto la subrogación la simple alegación o *claim* de que la compañía aseguradora no tiene responsabilidad para con el deudor hipotecario.

En *Traders' Ins. Co. et al.* v. *Race,* 142 Ill. 338, 31 N. E. 392, la corte tuvo bajo su consideración una cláusula pare-

cida a la que en estos momentos discutimos. Es innecesario exponer detalladamente los hechos que sirvieron de base a la opinión emitida por la corte. Baste con decir que los principios enunciados en dicha opinión son perfectamente aplicables al presente caso. El derecho a la subrogación, según la Corte de Illinois, no puede depender de la alegación escueta de que no hay responsabilidad bajo las pólizas, sino de los hechos que justifican tal alegación. "Para tener derecho a una cesión o subrogación," dice la corte, "la alegación debe hacerse de buena fe y estar basada en un estado de hechos que bajo el contrato autorice la exención de responsabilidad. Los derechos de la parte asegurada no pueden depender de la alegación arbitraria de la compañía aseguradora." Continúa la corte diciendo que la compañía tiene el peso de la prueba para demostrar que la pérdida ocurrió bajo circunstancias que la eximían de responsabilidad para con el deudor.

En el caso de *Sun Ins. Office of London* v. *Heiderer*, 99 Pac. 39, la Corte Suprema de Colorado se expresó así:

"Se verá que la contestación no contiene defensa alguna basada en que Rosenthal (deudor hipotecario) haya violado alguna de las condiciones de la póliza; tampoco se exponen los hechos en que se basa el apelante para alegar que no tiene responsabilidad para con el deudor. Se admite, como se expresa en la demanda, que la compañía demandante reclamó no tener rsponsabilidad para con Rosenthal bajo la póliza y que en vista de esto demandó que la apelada (acreedora hipotecaria) le cediera un interés en la hipoteca antes de pagarle el montante de la pérdida, y que la apelada, con el fin de asegurar tal pago, ejecutó y entregó una cesión de intereses en la hipoteca equivalente a dicho pago. La teoría de la defensa es que la compañía apelante, habiendo pagado el montante de la pérdida bajo la póliza al acreedor hipotecario, no estaba obligada a hacerlo de acuerdo con los términos expresos de la cláusula, y habiendo, según se convino, alegado al tiempo de verificar el pago que no existía responsabilidad para con el deudor hipotecario, quedó legalmente subrogada en los derechos del acreedor hipotecario sobre la cantidad pagada; en otras palabras, la compañía apelante basa sus derechos a la subrogación en su manifestación escueta de que no existía por parte de dicha compañía responsabilidad para con el asegurado, sin alegar

ningún hecho que bajo los términos de la póliza la eximiera de responsabilidad. En virtud del contrato de seguro Rosenthal tenía tanto derecho a ser indemnizado como el acreedor hipotecario, y si la pérdida era pagada al acreedor, tal pago redundaría en beneficio del deudor, reduciendo la deuda proporcionalmente. Antes de que el deudor pueda ser privado de este beneficio, debe demostrarse que ha violado las disposiciones de la póliza en algún particular que anulara dicha póliza con respecto a él. Su derecho no depende de la simple alegación de la compañía aseguradora. La apelante, por lo tanto, para valerse del derecho de subrogación en vez de aplicar el pago de la pérdida a la satisfacción de la hipoteca, debe alegar y probar un estado de hechos que bajo el contrato de seguro le dé derecho a quedar exenta de responsabilidad para con el deudor.''

En el caso de *Loewenstein* v. *Queen Ins. Co.*, 227 Mo. 100, 127 S. W. 72, la Corte Suprema de Missouri, interpretando una cláusula idéntica a la que forma parte del contrato de seguro que ahora consideramos, se expresó en los siguientes términos:

''Aun cuando ambos términos, 'subrogación' y 'cesión'. se usan en las cláusulas de endoso hipotecario de estas dos pólizas, sin embargo, en tanto en cuanto al término 'subrogación' se refiere, su efecto es cero, a menos que, bajo los hechos del caso, la equidad pudiera otorgar una subrogación fuera del contrato, pero la cesión es diferente: ésta concierne a o se funda en un contrato. Las compañías aseguradoras en este caso, según aparece de sus alegatos, realmente descansan sólo en el contrato contenido en la cláusula de endoso hipotecario de las pólizas. Nosotros no entendemos, que, independientemente del contrato, ellas reclaman ser las dueñas en equidad (*equitable owners*) de esta deuda hipotecaria y escritura de fideicomiso; y si ellas hicieran tal reclamación nosotros no hallamos nada en los hechos del caso que la sostenga. Consideremos el contrato. Ya hemos hecho mención de aquella clase de contratos en que el acreedor hipotecario, por su propia cuenta y a su costo propio, toma un seguro sobre la propiedad hipotecada para su protección propia. Nada de esto hay en el presente caso, y aquellos casos en los libros que discuten los derechos relativos de las partes en tal contrato no nos son de ayuda alguna en el estudio que hacemos. Pero aquí tenemos un contrato en el cual se provee que, si el asegurador paga al acreedor hipotecario 'y alegara (*claim*) que por ello, en cuanto al deudor hipotecario o dueño, ninguna responsabilidad existía,' entonces el asegurador se subragará en

todos los derechos del acreedor hipotecario, y éste hará cesión de los pagarés y escritura de fideicomiso a la compañía aseguradora. El lenguaje que allí se usa es peculiar. Literalmente quiere decir que cuando la compañía paga la deuda, si ella alegara que no es responsable al deudor hipotecario, entonces no lo sería. Se ha dicho en apoyo de tal cláusula que la misma no significa que una mera alegación por la compañía aseguradora de que no es responsable será suficiente para sostener la petición de subrogación, sino que la alegación debe ser una razonable. Ese requisito (*qualification*) no daría, sin embargo, validez a tal petición, porque una alegación podría tener alguna plausible o razonable apariencia, y sin embargo carecer de justificación legal.

"En Richards, Insurance Law, (3d. ed., p. 400) se dice: 'A pesar de la fraseología de esta cláusula, sin embargo el derecho de la compañía a descansar en la subrogación depende no de su alegación de que la póliza está invalidada o anulada en cuanto al deudor, sino de prueba en cuanto a que ello es así. La compañía aseguradora no puede descansar en su alegación de que la póliza ha sido anulada con respecto al deudor o de que existían motivos razonables para creerlo así, sino únicamente en el hecho de que fué así.' Una compañía aseguradora realmente no está en situación de hacer un llamamiento al sentido de justicia de los tribunales cuando ella emite su póliza ceñida o redactada en lenguaje tan injusto. Las pólizas de seguro no se redactan por hombres desconocedores del significado del lenguaje o de la ley de seguros. La cláusula en cuestión se titula en los alegatos ante nos y en los textos legales la 'cláusula corriente de endoso hipotecario,' por lo que inferimos que es una cláusula de uso general en compañías de seguro de primer orden y que su significado es lo que aparece de su contexto; esto es, que ellas (las compañías aseguradoras) no son responsables si alegan que no lo son. Si esto es así, entonces se trata de un convenio para hacer a la compañía aseguradora juez en su propia causa, lo que es tan irrazonable que ninguna corte debe hacerlo valer. Si, por el contrario, ello significa lo que el ilustrado escritor legal arriba mencionado dice que significa—esto es, que es la prueba del hecho y no la mera alegación del hecho lo que exoneraría a la aseguradora—entonces la cláusula tiene fundamento en razón y justicia sobre qué descansar. Pero si esa es la interpretación correcta, entonces las palabras 'y alegara que por ello, en cuanto al deudor hipotecario o dueño, ninguna responsabilidad existía' son innecesarias, porque si el deudor hipotecario realmente ha perdido su derecho, la ley no impondría a la compañía otra responsa-

bilidad que la que contrajo con él de pagar la deuda hipotecaria aun en la ausencia de estas palabras en el contrato.''

En el caso de *O'Neill* v. *Franklin Ins. Co.*, 159 App. Div. 313, confirmado por la Corte de Apelaciones de Nueva York, la compañía aseguradora ofreció al acreedor hipotecario Crimmins el pago completo de su hipoteca y demandó, alegando que no tenía responsabilidad para con el deudor, una cesión y transferencia que no pudo obtener por haberse negado dicho acreedor. De acuerdo con la póliza las pérdidas, en caso de ocurrir, debían pagarse al acreedor hipotecario, quedando a cargo de la deudora Mollie O'Neill el pago de las primas. Los términos del contrato interpretado por la corte son idénticos a los incluídos en la póliza autorizada por la recurrente. De la opinión de la corte en este caso extractamos lo siguiente:

''. . . El seguro pagadero a Crimmins como acreedor hipotecario era para beneficio no sólo de él sino de la dueña, quien tenía derecho a que ese pago se aplicara a rebajar la deuda hipotecaria. Por tanto, sería injusto y contrario a la intención de las partes el que la compañía aseguradora, efectuado el pago a Crimmins, sea subrogada en lugar de éste como tenedora (*holder*) de la hipoteca, y que por ello se prive a la dueña del beneficio de esa parte del dinero proveniente del seguro, a menos que ésta en alguna forma hubiera perdido su derecho. La contestación de la compañía aseguradora no suscita cuestión alguna de quebrantamiento del contrato de seguro por parte de la demandante, Sra. O'Neill, o que su derecho bajo la póliza de algún modo se haya extinguido, ni tampoco alega que, en cuanto a la demandante, no existe responsabilidad alguna bajo la póliza. El contrato para vender la granja no anulaba la póliza. Pero asumiendo que, no obstante la forma de su contestación, la compañía aseguradora pudiera aún alegar y probar contra el demandado Crimmins cualquier defensa de que pudiera ella aprovecharse, somos de opinión de que incumbía a la compañía aseguradora probar en el juicio que en cuanto a la demandante, deudora hipotecaria y dueña, ninguna responsabilidad existía contra ella. El contrato, según está contenido en la cláusula de endoso hipotecario, dice: 'Si en cualquier tiempo esta Compañía pagare al dicho acreedor hipotecario . . ., cualquier suma por pérdida o daño bajo esta póliza y alegare que en cuanto al deudor hipotecario o dueño no existe responsabilidad por

parte de la compañía para tal pago, quedará inmediatamente subrogada la compañía en todos los derechos de la parte a la cual se hizo el pago, bajo todas las garantías que tuviere como subsidiarias a la deuda hipotecaria, o puede a su opción pagar al acreedor hipotecario . . . el importe total vencido o próximo a vencer por concepto de la hipoteca, más intereses, y en su consecuencia recibirá una cesión y traspaso en pleno de la hipoteca y de cualesquiera otras garantías; pero ninguna subrogación así hecha menoscabará el derecho del acreedor hipotecario . . . de recobrar el importe de su crédito.'

"Es cierto que la compañía aseguradora demandada, mediante notificación, por escrito hecha al demandado Crimmins, alega que, en cuanto a la deudora hipotecaria, no existía responsabilidad alguna de su parte, más durante el juicio no probó que no fuera responsable para con la deudora hipotecaria. Por el contrario, antes del juicio propuso una sentencia a la demandante, que ésta aceptó, reconociendo así una responsabilidad, a favor de la demandante, bajo la póliza. Esta cláusula no debe interpretarse en el sentido de otorgar a la compañía aseguradora el derecho a la subrogación por la mera alegación de un derecho, sin fundamento alguno de hecho, y tal no fué la intención o el objeto de la cláusula en cuestión. La alegación que ella podría aducir debe ser válida y estar bien fundada, y así ha sido sostenido al interpretarse cláusulas de endoso hipotecario idénticas a la presente. (Traders' Insurance Co. v. Race, 142 Ill. 338; Anderson v. Saugeen Mut. Fire Ins. Co., 18 Ont. 355; Bull v. North British Canadian Investment Co. & Imperial Fire Ins. Co. v. Bull, 18 Canada Sup. Ct. 697.) En este último caso se resolvió que la compañía de seguros no estuvo justificada en pagar a los acreedores hipotecarios y en alegar subrogación sin litigar primeramente sobre su responsabilidad (*contesting its liability*) hacia el deudor hipotecario y sin establecer que estaba inmune de responsabilidad para con él.

"Puesto que la compañía de seguros demandada dejó de probar en juicio que bajo la póliza no tenía responsabilidad con respecto a la demandante (deudora hipotecaria), ella ha dejado de establecer el derecho a la subrogación en este litigio."

No puede decirse que en el presente caso se haya trasmitido un derecho inscribible en el registro de la propiedad. Se afirma que la compañía aseguradora no tiene responsabilidad para con el deudor hipotecario; pero la afirmación del hecho no es el hecho en sí del cual depende el derecho a la subrogación. La simple afirmación de la compañía no basta

para determinar la existencia del hecho. Es necesario probarlo y el *onus probandi* corresponde a la compañía. Si se inscribiera la subrogación, la compañía subrogada podría iniciar un procedimiento ejecutivo contra el deudor y entonces éste tendría que acudir a un juicio declarativo contra la compañía para defender sus derechos, a pesar de que ésta es la llamada a probar que no tiene responsabilidades para con el deudor. Puede ocurrir que la alegación de la compañía de que está exenta de responsabilidades para con el dueño quede destruída por la prueba en el juicio plenario y entonces se habría dado el caso de haberse inscrito una trasmisión de derecho que no tuvo existencia legal y haberse permitido al subrogado hacer efectivo mediante un procedimiento sumario un derecho que nunca surgió a la vida.

*Debe confirmarse la nota recurrida.*

El Juez Asociado Señor Wolf disintió.*