Gus LYKOS, Mike Bousis, George Bousis, Helen Bousis, Maria Bousis and Catherine Lykos, Plaintiffs,

v.

AMERICAN HOME ASSURANCE COMPANY, Defendant.

No. 76 C 692.

United States District Court, N. D. Illinois, E. D.

June 21, 1978.

Mathew K. Szygowski and Bianco & Szygowski, Chicago, Ill., for plaintiffs.

William J. Schaefle and Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendant.

Rabens, Formusa & Glassman, Chicago, Ill., for intervening petitioner, Spalter Finance Co.

## MEMORANDUM AND ORDER

PERRY, Senior District Judge.

This case was tried before a jury and the jury returned a verdict in favor of plaintiffs. The cause now comes on upon the motion of defendant to set aside the verdict for plaintiffs and for a judgment *non obstante veredicto* in accordance with defendant's previous motion for a directed verdict or, in the alternative, for a new trial. The court has read and considered the motion and the memoranda of counsel for the parties filed in support of their respective positions thereon; has heard the argument of counsel; and is now fully advised in the premises.

Plaintiffs Gus Lykos, Mike Bousis, George Bousis, Helen Bousis, Maria Bousis and Catherine Lykos brought this action to recover on an insurance policy issued by the defendant American Home Assurance Company for damage arising out of a fire on certain business premises. Defendant denied the loss is covered under its policy and asserted certain affirmative defenses.

Upon trial the evidence showed plaintiffs owned a building in Hoffman Estates, Illinois, that had been newly remodelled and newly reequipped, and that plaintiffs owned and operated a restaurant on the premises known as Tino's Restaurant & Lounge in which both food and alcoholic beverages were served. Plaintiffs had obtained a policy of insurance with defendant American Home Assurance Company. It insured, *inter alia*, against loss by fire of

the building, equipment and inventory, and against business interruption. The policy's limit was $550,000 and the policy was in full force and effect on March 31, 1975.

On or about March 31, 1975, plaintiffs suffered a fire loss at Tino's Restaurant & Lounge. The entire roof of the building was destroyed and caved in from the top. The building and much of the equipment therein was damaged by the fire and plaintiffs were no longer able to conduct business on the premises. Pursuant to the terms of the insurance policy, plaintiffs reported the loss and made claim for their loss with defendant in apt time. On February 13, 1976, defendant formally denied plaintiffs' claim and thereafter plaintiffs brought this suit.

Upon trial the evidence showed that plaintiffs engaged Gale Olson, a public insurance adjuster, and had agreed to pay him 10 per cent of any recovery from defendant. Gale Olson had various conferences with Gus Lykos concerning plaintiffs' claims for losses. Based upon his memory and observations after the fire, Gus Lykos, together with Gale Olson, prepared a document purporting to be a sworn proof of loss and claiming three categories of losses: $167,390.29 for damages for the building loss; $188,711.37 for loss of contents, including food, liquor and equipment; and $39,703.56 for loss of gross earnings or business interruption. Plaintiffs then submitted to defendant a sworn statement in proof of loss for $395,805.22, the total amount of their categories of claims.

The evidence showed a large number of items in the contents claim were overvalued. In preparation of the claims, neither Gus Lykos or Gale Olson referred to bank records or other records of plaintiffs that were recovered from the fire by fire officials of Hoffman Estates and delivered to Gus Lykos, which records would have shown the amounts paid for supplies and equipment. Neither did either of them consult any of the merchants, wholesalers or other suppliers concerning purchases made by plaintiffs before the fire. Plaintiffs in their claims included numerous items of alcoholic beverages, meat and other food on hand in their inventory of supplies, detailing their value per bottle or per pound. Defendant subpoenaed the only suppliers of plaintiffs for those items with copies of invoices for the supplies; and upon trial defendant demonstrated without contradiction that in many instances plaintiffs had paid less per bottle for beverages, and less per pound for meat, than plaintiffs had set out in their claim, filed under oath with defendant. In one instance plaintiff included a claim for a clock on which they placed a value of $2,000. Upon trial the only clock that plaintiff could show was damaged was a clock costing $200. Plaintiffs also included in their claims all their tables, chairs and dining room equipment. Pictures of the dining room introduced into evidence showed most of the tables and chairs intact after the fire.

The evidence also showed numerous duplications between the building and contents claims and many items overvalued by plaintiffs. Upon trial plaintiffs contended each of the three claims included in the proof of loss was an estimate and removed certain duplications. However, plaintiffs made no attempt to explain or justify the very substantial difference between the amounts of money they claimed for losses as set forth in their claims, filed under oath with defendant, and the actual amounts paid by them as shown from the paid invoices of their suppliers.

Defendant denied plaintiffs' loss is covered under its policy and that it is indebted to plaintiffs in the amount of $395,805.22 or in any other amount. Defendant contended that plaintiffs breached provisions of the insurance policy in that they misrepresented the amount of the loss in their sworn statement in proof of loss when in fact they knew the loss was less than $395,805.22. The defendant also contended that the plaintiffs breached the following provision of the insurance policy when, in their sworn statement in proof of loss, they swore the fire was of unknown origin when they then and there knew the fire was of incendiary origin. The policy, *inter alia*, provides:

"*Concealment, fraud.* This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

In another of its affirmative defenses the defendant further claimed that plaintiffs breached the policy provisions in that they or someone acting on their behalf intentionally set fire to Tino's Restaurant & Lounge with the intent to cheat and defraud the defendant.

Plaintiffs contended they complied with all the policy's requirements and denied that they misrepresented the amount of the loss. They admitted the fire was intentionally set but denied that either they or their agent intentionally set the fire.

Plaintiffs not only claimed a loss of $395,-805.22 in their sworn statement in proof of loss but later brought suit for the entire amount. It is clear from the evidence that plaintiff submitted the claim with the intent of receiving the total amount. The jury in its verdict for plaintiff assessed the damages for the contents loss in the sum of $125,000; the damages for the building loss in the sum of $163,000; and the damages for the loss of gross earnings in the sum of $39,000. This total of $327,000 is an amount significantly less than the amounts plaintiffs claimed, especially on the contents claim.

■ The ascertainment and assessment of the damages is a question of fact within the province of the jury as is fraud and false swearing; but there is a question of law when an insured's misrepresentations cannot be seen as innocent. Plaintiffs had an obligation to honestly state under oath the extent of the damages. The evidence showed Gus Lykos knowingly and willfully concealed and misrepresented material facts and that he made false and fraudulent claims in preparing the claims. The total evidence introduced in the trial of this action showed a definite plan by plaintiffs

and Gale Olson to file false claims for fire losses and an intent to defraud defendant by submission of a purported $395,805.22 loss. The exaggeration of the extent of the loss was willful and grounds for avoidance of any and all liability under the policy.

In plaintiffs' sworn statement in proof of loss, it was stated the fire was of unknown cause and origin. By the testimony of police and fire officers and other witnesses, it was shown that plaintiffs, particularly Gus Lykos, actively participated in the investigation of the fire. Upon trial plaintiffs admitted the fire was intentionally set but denied they or their agent intentionally set the fire and, according to plaintiffs, no one had a motive for committing the arson. When the restaurant was remodelled the locks were changed and only the three brothers who are plaintiffs here had keys to Tino's. The restaurant and lounge had been closed and secured about 12:15 A.M. The fire department responded to an alarm at 1:04 A.M. Gasoline had been spread throughout the restaurant, the washrooms and attic. When firemen arrived they found the doors locked and secured and they forcibly entered the restaurant and fought the fire. From the testimony of the fire investigation expert and fire department officials it appears implausible that someone other than plaintiffs or their agents could have entered the building, spread gasoline throughout the restaurant and left without leaving a trace of forced entry or exit in such a short period of time. The verdict as returned by the jury is clearly against the manifest weight of the evidence.

■ The gross earnings-business interruption claim submitted by plaintiff was in excess of $39,000. The testimony of plaintiffs' accountant and defendant's accountant revealed the restaurant was not profitable and was losing approximately $3,000 net a month. Although Tino's was losing money, plaintiffs submitted a claim for gross earnings loss. Evidence was also introduced that plaintiffs were in financial difficulties. Under the circumstances plaintiffs are not entitled to recover under the busi-

ness interruption coverage; and the court finds this claim was made with intent to cheat and defraud defendant and that on this claim judgment must be entered for the defendant and against plaintiffs on the ground of fraud as a matter of law.

Plaintiffs knowingly and willfully made misrepresentations and false statements and concealed material facts with intent to defraud defendant and this was a flagrant breach of provisions of the policy. By reason thereof, plaintiffs are not entitled to recover any sum under the insurance policy issued by American Home Assurance Company. The court has a responsibility to decide this case in accordance with the law. The law supports the defendant and the court is required to make a finding of fraud as a matter of law. *Esquire Restaurant, Inc. v. Commonwealth Ins. Co. of N. Y.*, 393 F.2d 111 (7th Cir. 1968); *Gregory's Continental Coiffures and Boutique, Inc. v. St. Paul Fire & Marine Ins. Co.*, 536 F.2d 1187 (7th Cir. 1976); *Tenore v. American & Foreign Ins. Co. of N. Y.*, 256 F.2d 791 (7th Cir. 1958). A party should not be compelled to go to the Court of Appeals to have the law applied even if a jury has rendered a verdict.

The verdict returned by the jury was contrary to law and the evidence. The evidence adduced was overwhelmingly in favor of defendant and against plaintiff and the jury verdict was manifestly against the weight of the evidence. This court in good conscience cannot let the jury verdict stand. In the event of an appeal and if this court is reversed on its decision to set aside the verdict and to order judgment in favor of defendant, then a new trial should be granted.

Before trial of this cause began, defendant American Home Assurance Company compromised and/or settled two claims for proceeds due under the insurance contract. James M. McArthur, Sr. and John T. McArthur held a mortgage on the building and land and said mortgagees were additional insureds under the policy. The court takes judicial notice of a suit brought by said mortgagees in this court, claiming proceeds due under the policy. The case (numbered 76 C 1206, entitled *James McArthur, Sr. and John T. McArthur v. American Home Assurance Company*) was assigned to Judge Bernard M. Decker; and after the subject matter of that suit was settled, the case was dismissed. It was revealed in an informal pre-trial conference in the case before this court that the insurance company had paid the mortgagees, additional insureds, the sum of $124,000. Also, in the case before this court an intervening petition was filed by Spalter Finance Company, alleging plaintiffs were indebted to the finance company for unpaid balances on two notes and seeking to recover from American Home Assurance Company under a Lender's Loss Payable Clause, attached to and forming part of the policy. In its answer to the intervening petition, the defendant asserted an affirmative defense that it was willing to pay petitioner under the Lender's Loss Payable Clause in return for an assignment of the notes but that petitioner had failed and refused to execute full and complete assignments as required by defendant's policy. On June 19, 1977 the parties stipulated and agreed that the intervening petition of Spalter Finance Company be withdrawn. Prior to trial it was revealed that the insurance company had paid the finance company $1,000.

For all of the foregoing reasons, it is ORDERED that the motion of defendant to set aside the verdict for plaintiffs and to order judgment *non obstante veredicto* for defendant, in accordance with the previous motion for directed verdict, be and it hereby is granted. It is FURTHER ORDERED that the jury's verdict herein be and it hereby is set aside and that judgment be and it hereby is entered for defendant. It is FURTHER ORDERED that defendant's motion for a new trial be granted, this ruling to take effect only in the event that the ruling of this court on defendant's motion for judgment is reversed. Inasmuch as this court has expressed herein its views of this case, it would be improper for this court to preside at a re-trial of this cause.