NAGEL-TAYLOR AUTOMOTIVE SUPPLIES, INC., a/k/a Nagel-Taylor, Inc., d/b/a Club Virgo, et al., Plaintiffs-Appellants, v. AETNA CASUALTY & SURETY COMPANY OF ILLINOIS, Defendant-Appellee.

Fourth District    No. 17301

Opinion filed December 30, 1981.

Thomas J. Immel, of Burditt and Immel, of Springfield, for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (Norman A. Miller, William J. Schaefle, and Elizabeth J. Whinery, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Prior to the proceedings in issue, plaintiffs, Nagel-Taylor Automotive Supplies, Inc., and Marvin C. Taylor, as owners of certain real estate and personalty, had brought suit in the circuit court of Sangamon County against defendant, Aetna Casualty & Surety Company of Illinois, under a policy of insurance issued by defendant, to recover for a fire loss occurring on May 13, 1976. After a trial by jury, a verdict was returned in favor of plaintiffs and against defendant in the sum of $175,000 and the court entered judgment on that verdict but later awarded defendant a judgment *n.o.v.* On appeal this court reversed, reinstating the judgment on the verdict for plaintiffs. (*Nagel-Taylor Automotive Supplies, Inc. v. Aetna Casualty & Surety Co.* (1980), 81 Ill. App. 3d 607, 402 N.E.2d 302.) Subsequently, plaintiffs filed a pleading in the trial court entitled "Motion to Enforce Mandate." On May 21, 1981, acting on the foregoing pleading, that court entered an order finding plaintiffs entitled to certain sums of prejudgment and post-judgment interest for certain periods of time and also providing that defendant was entitled to a credit against the judgment for interest due defendant as assignee of a mortgage which had encumbered the insured property.

On June 19, 1981, plaintiffs filed a notice of appeal which stated it was from:

"[T]hat portion of the judgment of the trial court entered May 21, 1981, to the extent that such order provides, 'Credit shall be given to the Defendant at the rate of 9% on the amount of the mortgage for the period from March 4, 1977 to date of closing.' "

No claim is made by defendant that the foregoing does not set forth a properly appealable portion of a judgment. (See 73 Ill. 2d R. 303(c)(2).) Because of the limited issue presented by the notice and because no cross-appeal was filed, the only question before us is the propriety of the credit given the defendant. We hold it to have been improper and reverse.

Defendant claims it was entitled to the setoff because on March 4, 1977, it paid to a mortgagee holding a note and mortgage, encumbering the insured premises and securing the note, the sum of $52,296.79 which was the amount of the then mortgage indebtedness, and secured in exchange an assignment of the mortgage and the indebtedness. Plaintiffs, apparently, do not dispute this occurred. Defendant's claim is also based upon the existence of the following standard provision in the insurance policy upon which the judgment was obtained:

"If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery,

but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage."

The record before us is insufficient to determine whether the policy contained such a provision, and plaintiffs do not concede that it did. In any event, even if the policy did so provide, the facts of this case do not support the award of the credit.

In *Clark v. Trainor* (1925), 237 Ill. App. 269, where a policy of insurance contained a clause similar to that claimed by defendant, the court stated:

"Under the subrogation clause, where the policy has become avoided as to the mortgagor, the insurer, upon paying the mortgagee a loss *as to which no liability existed as to the mortgagor*, is entitled to be subrogated to the right of the mortgagee and to securities given to secure the mortgage debt." (Emphasis added.) (237 Ill. App. 269, 276.)

Plaintiffs do not dispute that had the ultimate decision been that defendant was not liable on the policy to them, the existence of the subrogation-assignment clause claimed by defendant would have entitled defendant to the rights of the mortgagee and would have made plaintiffs liable to defendant for the principal and interest on the mortgage indebtedness. Plaintiffs deny that any such liability was created here because the ultimate determination was that defendant was liable to them, the mortgagors, on the policy.

Defendant places substantial reliance on *Kerber v. Girling* (1929), 254 Ill. App. 1. There, a fire caused damage to property resulting in a loss to property listed in a policy containing provisions similar to those claimed by defendant. The property was encumbered by a mortgage. While the insurer and the mortgagor-owner were involved in litigation as to whether coverage was defeated by conduct of the owner, the mortgagee brought a separate suit to require the insurer to pay the mortgagee to the extent of the mortgage indebtedness. On review, the appellate court held the mortgagee was entitled to payment, whereupon the insurer would be subrogated to the mortgagee's rights against the mortgagor-owner. The owner was ordered to pay the insurer the mortgage indebtedness, with the insurer being entitled to foreclose upon the owner's failure to do so. The court stated:

"If the insurance companies are compelled to have their claim of nonliability adjudicated in * * * court before they can be subrogated to the rights of the mortgagee, they will be rendered helpless. This situation would arise from the fact that the notes and mortgage will have been merged in the decree and cannot be assigned; such a situation would thwart justice and is not in

harmony with the contract, under which the companies became liable to the mortgagee. It would make them subject to all the liabilities of the contract, but deprive them of all of the advantages of it. To require the insurance companies to litigate the question of the liability with the assured before they can make payment to the mortgagee and be subrogated to his rights, would deprive and prevent the right of subrogation.

\* \*. \* The reasonable interpretation to be given to the subrogation clause found in the policies of insurance is that whenever the insurance companies, in good faith, deny liability to the assured and have reasonable grounds for such claim of nonliability, then and in that case they may take an assignment of the mortgage and be subrogated to the rights of the mortgagee." 254 Ill. App. 1, 6.

The *Kerber* court cited with approval and relied upon *Traders' Ins. Co. v. Race* (1892), 142 Ill. 338, 31 N.E. 392. There, after a loss occurred, an insurer, under a policy containing similar provisions to that in *Kerber*, paid the trustee under a trust deed encumbering the insured premises the amount of the secured indebtedness. Then, claiming to be subrogated to the rights of the trustee, the insurer brought suit to foreclose the trust deed. On review, the supreme court held the insurer to have failed to prove that the insured owner's conduct had caused a forfeiture of the owner's rights under the policy. It, therefore, held the insurer had not become entitled to the rights of the trustee against the owner either by assignment or subrogation. Rather, it held the payment to the trustee merely to have extinguished the indebtedness of the owner.

The *Traders' Ins. Co.* opinion, in noting the existence of the provision for subrogation or assignment, stated:

"The right to subrogation, however, can not be said to depend upon the naked claim of appellants that there is no liability on the policies to appellee, but the facts must warrant such claim. The claim, to entitle them to an assignment and subrogation, must be made in good faith, and be based upon a state of facts which, under the contract of insurance, would entitle them to exemption from liability." 142 Ill. 338, 345, 31 N.E. 392, 394.

The *Kerber* court relied on the above language to support its holding that the insurer, who had paid the mortgagee its share of proceeds from a loss but was in good faith disputing its liability to the mortgagor-owner, did not have to await the determination of that dispute before enforcing its rights of assignment or subrogation against the mortgagee-owner. Defendant also relies on that language in support of its theory it was entitled to credit for interest accrued on the mortgage. The quoted language in *Traders' Ins. Co.* gives some indication that to claim an assignment or subrogation, an insurer's claim that it is not liable to the

owner-mortgagor need only be in good faith, but the holding was that the insurer was not entitled to foreclose under the assignment of the interest of the mortgagee unless it proved it had no liability to the owner-mortgagor.

The decision in *Traders' Ins. Co.* was by the supreme court and is binding precedent for us. *Kerber* was a decision of an appellate court from another district and to the extent it contradicts *Traders' Ins. Co.*, it should be disregarded. We conclude that under *Traders' Ins. Co.* an insurer assignee of a mortgage covering the insured premises must prove its freedom from liability to the owner-mortgagor in order to enforce its rights under the assignment. Here the liability of the defendant insurer to the plaintiffs-owners-mortgagors had been determined conclusively at the time defendant sought a credit for the interest accrued on the mortgage. Defendant asserts *Traders' Ins. Co.* is not precedent for the instant case because there the proceeding was one in equity seeking foreclosure while here the suit was at law and the proceedings from which appeal was taken involved enforcement of the judgment obtained at law. We do not deem the difference between law and equity to be so great that defendant would be entitled to a substantial credit in satisfying the judgment but not entitled to that credit if it sought to foreclose the mortgage assigned it. Moreover, some equitable principles are applicable in adjudicating the rights between insurer and insured.

Under *Traders' Ins. Co.*, the payment by defendant of the mortgage debt was for the benefit of plaintiffs and ultimately operated as an extinguishment of that debt. This appeared to be the theory used by the trial court in determining the amount of interest to which plaintiffs were entitled before calculating the credit. It calculated the interest on the full amount of the ultimate judgment from September 17, 1976, until March 4, 1977, the date when defendant made payment to the mortgagee. After that date, the court calculated interest only upon the full amount of the judgment minus the payment to the mortgagee, thus indicating that the defendant was getting credit for having extinguished the mortgage debt at that time. To later give the defendant a credit for the interest which would have accrued on the indebtedness until "date of closing" was inconsistent.

For the reasons stated, we reverse the portion of the decree appealed.

Reversed.

WEBBER and MILLS, JJ., concur.