NAGEL-TAYLOR AUTOMOTIVE SUPPLIES, INC., a/k/a Nagel-Taylor, Inc., d/b/a Club Virgo and/or Marvin C. Taylor, a/k/a Charles Taylor, Plaintiffs-Appellants and Cross-Appellees, v. AETNA CASUALTY & SURETY COMPANY OF ILLINOIS, Defendant-Appellee and Cross-Appellant.

Fourth District   No. 15741

Opinion filed March 12, 1980.—Rehearing denied April 10, 1980.

Marilyn J. Schroeder and Walter H. Kasten, both of Springfield, for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago, and Gillespie, Cadigan & Gillespie, of Springfield (James T. Ferrini and William J. Schaefle, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

The principal issue in this case is whether under the evidence a jury could properly find that coverage under a fire insurance policy had not been voided by fraud and false swearing when the insured submitted a verified proof of loss containing an unreasonably high estimate of its business interruption loss.

The suit was brought in the circuit court of Sangamon County by plaintiffs Marvin C. Taylor (Taylor) and Nagel-Taylor Automotive Supplies, Inc., a corporation of which Taylor was the sole owner and principal officer. It was brought against defendant Aetna Casualty & Surety Company of Illinois to recover for a fire loss occurring on May 13, 1976, when a building near Litchfield, owned and operated by plaintiffs as a nightclub, burned. After a trial by jury a verdict was returned for plaintiff allowing $125,000 for damage to the building, $50,000 for damages to its contents and nothing for business interruption loss.

The trial court granted defendant's motion for judgment *n.o.v.*, ruling that defendant had proved as a matter of law that plaintiffs had committed fraud and false swearing in the proof-of-loss statement. Consistently the trial court also allowed defendant's alternative motion for a new trial concluding that, in any event, the jury's rejection of the affirmative defense was contrary to the manifest weight of the evidence. The trial court rejected that portion of defendant's post-trial motion which asked for a new trial on the grounds that the jury's determination that Taylor was not guilty of arson was contrary to the manifest weight of the evidence.

Plaintiffs appeal and defendant has filed notice of cross appeal.

Defendant's affirmative defense of fraud and false swearing was based on a policy provision which stated:

> "*Concealment, fraud.* This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

Under the terms of the policy plaintiffs were insured for actual business interruption losses such that they would be reimbursed for the amount by which their profits decreased (or losses increased) during the interruption, "but not exceeding the reduction in gross earning less charges and expenses which do not necessarily continue during the

interruption of business * * *." The policy limited payment for this type of loss to the sum of $50,000. A written proof of loss verified by Taylor and timely mailed to defendant stated, "Gross earnings—estimated loss in excess of $100,000 for twelve month period."

The insured property was located on U.S. Route 66 south of Litchfield, a municipality of some 7,000 population. Prior to its purchase and remodeling by plaintiffs, the building had been used as a fast food franchise restaurant. The evidence indicated that the location became undesirable for that purpose when Interstate Route 55, passing Litchfield farther to the west, was opened to traffic. The strongest evidence in support of the affirmative defense of fraud and false swearing were the financial records of the operation. They indicated a deficit exceeding $17,000 to have accumulated in the eight months of the club's operation on total receipts of about $95,000. The cost of goods sold was about $14,000.

Charles T. Baker, a certified public accountant specializing in business interruption claims, testified on behalf of defendant concerning his examination of the club's records. He described the business as being "in very poor financial condition" and stated that liabilities exceeded current assets by 16 to 1, but he did not state the seemingly more important ratio of current liabilities to current assets. He described the records as somewhat unreliable but concluded from his examination of them that no business interruption loss was sustained.

Taylor testified, attempting to justify his optimistic expectations by explaining how entertainment expenses had been drastically cut prior to the fire. He described how previously he had hired expensive entertainers such as those used in expensive Las Vegas nightclubs, but due to small week-night crowds he had recently begun to hire cheaper performers who would appeal to younger crowds.

Taylor presented a profit and loss statement for nine months, the figures for the last month having been lost. When this statement was compared with the records for the eight months as contained in the books it was shown that a profit of $4,500 would have had to have been made in the last month in order for the statement to reconcile with the books. Taylor apparently obtained the results shown on the statement by crediting expense accounts which previously listed as expense, rent theoretically owed but not paid by the corporation to Taylor or vice versa. The business was run and the records kept in such a way that one could not readily tell the respective functions of Taylor and the corporation.

We consider Taylor's estimate to be unreasonably high, but in determining whether the jury could have properly determined that fraud and false swearing did not exist we deem it important that the estimate

contained no assertion of an existing fact nor even an opinion concerning the quality or value of an existing object. It was merely a projection of future earnings.

The only case brought to our attention where fraud was alleged because of an overstatement of business interruption loss is *Lykos v. American Home Assurance Co.* (N.D. Ill. 1978), 452 F. Supp. 533, *aff'd* (7th Cir. 1979), 609 F.2d 314. There, as an affirmative defense to a suit on a fire insurance policy, the insurer pleaded fraud and false swearing by the insured in making proof of loss as to both the claim for equipment and inventory loss and the claim for business interruption loss. Even though the jury verdict for business interruption loss nearly equaled the amount claimed for that item in the proof of loss, the district court held that the defense had proved, as a matter of law, that fraud and false swearing had occurred in making both proofs of loss. The determination as to the business interruption loss was based largely on evidence showing the operation to have been losing an average of $3,000 per month for some time and that relevant documents had been withheld from the insurer. In affirming, the Circuit Court of Appeals relied entirely upon the false swearing as to the proof of inventory and equipment loss and made no reference to the business interruption loss claimed in the proof-of-loss statement. The latter opinion emphasized that an insured is not excused from making an exaggerated estimate of loss merely because he intends to use it to bargain with the insurer.

Other than *Lykos*, the most analogous fraud and false swearing cases are those involving proof-of-loss claims which greatly overestimate the value of physical objects. In *Tenore v. American & Foreign Insurance Co. of N. Y.* (7th Cir. 1958), 256 F.2d 791, *cert. denied* (1958), 358 U.S. 880, 3 L. Ed. 2d 110, 79 S. Ct. 119, an insured had submitted a proof-of-loss statement claiming $78,000 for a destroyed gun collection. At the trial undisputed evidence showed many guns were old and missing parts. The insured's own expert testified to the collection being worth no more than $20,000. Similarly in *Saks & Co. v. Continental Ins. Co.* (1968), 23 N.Y.2d 161, 242 N.W.2d 833, an insured's proof-of-loss statement that clothing destroyed by fire had been worth $985,000 was held to be false swearing as a matter of law. The holding was based largely upon the jury's having found the actual value to have been only $104,316 and plaintiffs having shown no explanation for this great disparity. The court noted that the insured was an expert in the clothing field and reasoned that the gross disparity caused an unrebutted presumption of fraud. In *American Home Fire Assurance Co. v. Juneau Store Co.* (7th Cir. 1935), 78 F.2d 1001, a disparity between a proof-of-loss valuation estimate of $73,000 for certain goods and a subsequent jury determination that they were only worth $33,000 was held sufficient to make the proof-of-loss estimate fraudulent

as a matter of law. The court concluded that the disparity showed that claim was made for goods that had not in fact been destroyed because no dispute existed as to the value of individual items.

In other cases where fraud and false swearing have been held to exist as a matter of law additional factors have been present. In *Kavooras v. The Insurance Company of Illinois* (1912), 167 Ill. App. 220, an insured's proof-of-loss statement claimed that destroyed groceries had a value of $4,114. However, the insured admitted that these groceries consisted of $714 worth recently salvaged from a fire and $450 worth recently purchased. In *Folk v. National Ben Franklin Insurance Co.* (1976), 45 Ill. App. 3d 595, 359 N.E.2d 1056, plaintiff's proof-of-loss statement included items he had sold after the fire. In *Harold J. Warren, Inc. v. Federal Mutual Insurance Co.* (1st Cir. 1961), 386 F.2d 579, uncontradicted evidence showed that the contractor engaged to repair damaged air conditioning units had told the insured that only $3000 worth needed to be replaced because of the fire, but nevertheless the insured submitted an $8750 proof-of-loss statement which included replacement of undamaged air conditioning units. Although holding fraud to have been proved as a matter of law there, the court stated:

> " 'Intent to defraud is not to be presumed and the trier of fact should make all reasonable allowance for lack of knowledge or sound judgment or for honest mistake on the part of the insured as well as for the tendency to believe that which is to one's own interest * * *.' " 386 F.2d 579, 581.

Reviewing courts have refused to find fraud or false swearing despite substantial discrepancies between the amount claimed in the proof of loss and the jury's verdict in *Commercial Insurance Company of California v. J. Friedlander* (1895), 156 Ill. 595, 41 N.E. 183 ($9,840 vs. $1,278); *Badger Mutual Insurance Co. v. Morgan* (5th Cir. 1963), 313 F.2d 783 ($95,000 v. $35,400); and *C-Suzanne Beauty Salon, Ltd. v. General Insurance Co.* (2d Cir. 1978), 574 F.2d 106. In *Berkshire Mutual Insurance Co. v. Moffett* (5th Cir. 1967), 378 F.2d 1007, the court indicated that the insured's estimate must be a matter of fact and reasonable inference but concluded that a very substantial difference between original proof-of-loss estimate and the eventual jury award did not prevent the jury from properly finding that no fraud or false swearing occurred. See also Annot., 16 A.L.R.3d 744 (1967).

Even in regard to the making of estimates of *existing* values of personal property, the court in *Harold J. Warren Co.* warned of the necessity for courts to make "reasonable allowances for lack of knowledge or sound judgment" on the part of the insured. That is even more applicable when applied to the making of *future* projections of earnings in a relatively new establishment in a volatile type of business. Many

such businesses lose for a while and then become profitable. Taylor indicated an intention to change his method of operation. The jury could have believed that he thought that he could start operating at a substantial profit. Defendant points to the club's poor location and lack of surrounding population to support it. But these factors existed from the beginning, and the jury could have concluded that Taylor originally thought he could succeed because he was an overly optimistic person and this, rather than fraudulent design, accounted for his inflated proof-of-loss claim. This is especially true when we consider the dictum of *Harold J. Warren Co.* which noted that natural tendency "to believe that which is in one's own interest."

This case differs from *Lykos* in that there evidence indicated that the insured had withheld business records from the insurer, while in the case at bar Taylor freely turned over the records which enabled defendant's expert to effectively refute the claim, thus lessening any inference of fraud. More importantly, we note that (1) in *Lykos* the Circuit Court of Appeals avoided the question of whether the insured's exaggerated estimate of his business interruption loss amounted to fraud and false swearing as a matter of law, and (2) no other case on this question has been called to our attention. We consider the inherently speculative nature of future profits to account for the lack of precedent. The more speculative an estimate is, the more difficult it becomes to find fraud or false swearing as a matter of law, especially where the estimate is made by a nonexpert.

■■ Even though the jury rejected plaintiff's claimed business interruption loss and even though Taylor's estimate of the loss was clearly unreasonable, neither prevented the jury from being able to properly conclude that Taylor actually had such an unrealistic view of the future. The jury's verdict was neither wrong as a matter of law nor contrary to the manifest weight of the evidence.

■■ Defendant has properly called to our attention the damage to society resulting from fraud, false swearing, and arson by insureds. We recognize the seriousness of the problem but we do not think that our decision here, which may have the effect of permitting insureds to be imprecise in estimates of future earnings, will enlarge the problem. We recognize that an insurer need not be defrauded in order for the defense of false swearing to be established (Annot., 16 A.L.R.3d 774, 798, §10[b] (1967)), but we deem it appropriate to note that insurers are unlikely to give any significant weight to an assertion by an insured as speculative as the instant one without an examination of facts upon which it might be based.

■■ As we now turn to the arson issue, we also note that defendant has stated that we should consider the evidence of arson as bearing upon the proof of fraud and false swearing. We consider the evidence of arson to

have some probative value as to plaintiff's *modus operandi* and intent. But, whether plaintiff committed arson was a question of fact and, as we will explain, we have concluded that the jury could properly have found plaintiffs not responsible for arson. Accordingly, this circumstantial evidence does not change our conclusion that the jury verdict should have stood.

Defendant's theory that the fire was caused by plaintiff's arson is based upon the strong and unrefuted testimony of two experts in the fire and arson investigation field which would indicate that someone purposefully set the building on fire by use of gasoline. Taylor testified, by way of alibi, that he spent the night of the fire in a motel in Jacksonville with his girlfriend while on a business trip. This testimony was supported by strong corroboration but there was also substantial circumstantial evidence that the fire was set at his direction. He had the obvious motive to set the fire to recoup his investment in a failing business. Evidence also showed that at the time of the fire all of the keys to enter the building were in Taylor's possession or that of those friendly to him. Firemen arriving on the scene found the building locked. Thus it could have been difficult for anyone else to have gotten into the building to set the fire. The jury could also have inferred that by controlling all of the known sets of keys, Taylor hoped that firemen answering the fire call would be impeded in getting in the building to put it out.

Other circumstantial evidence also inferred Taylor's complicity. He had left very little liquor in the store at the time of the fire and had recently moved out several pinball and cigarette machines. The alibi testimony could have been considered to be so perfect as to be likely contrived. Taylor had obtained a very detailed receipt from the motel. Nevertheless, the evidence was all circumstantial and, in view of the alibi testimony, did no more than to create a question of fact which the jury resolved in plaintiffs' favor.

The result of our determination is that the jury verdict should be reinstated. Accordingly, we reverse the portions of the order appealed and affirm the portions of the order from which cross-appeal was taken.

Reversed in part; affirmed in part.

MILLS, P. J., and WEBBER, J., concur.