No. 2--03--0867

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

____________________________________________________________________________

MARTIN WASIK, ) Appeal from the Circuit Court of Lake

) County.

Plaintiff-Appellant,
 )

)

v. ) No. 02--AR--1738

)

ALLSTATE INSURANCE COMPANY, ) Honorable

)
 Henry C. Tonigan, III,

Defendant-Appellee. )
 Judge, Presiding.

______________________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

I. INTRODUCTION

After a fire destroyed his garage and its contents, plaintiff, Martin Wasik, made a claim under a homeowners insurance policy that defendant, Allstate Insurance Company, had issued to him.  Claiming that plaintiff's stepson intentionally started the fire, defendant denied coverage.  Plaintiff commenced this breach-of-contract action.  The trial court denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment.  On appeal, plaintiff argues that, because he is an innocent insured, the acts of his stepson cannot be imputed to him to deny coverage.  We reverse.

II. BACKGROUND

In his complaint, plaintiff alleged that he complied with his obligations under the policy and that defendant breached the policy by failing to pay plaintiff's claim.  Defendant raised as affirmative defenses that (1) the fire was the result of the intentional act of an insured, William Fort, and (2) insureds William and his wife, Kathleen Fort, made material misrepresentations regarding the circumstances of the loss.  Each party moved for summary judgment.  See 735 ILCS 5/2--1005 (West 2002).  The materials submitted in connection with the motions reveal the following.

Plaintiff submitted a claim for $8,082, and William and Kathleen submitted a $55,000 claim for loss of personal property they stored in plaintiff's garage.  William and Kathleen are not parties to this litigation, and their claim is not at issue here.

During his examination under oath, plaintiff testified that he lived in a single-family home with a detached garage.  His wife, Nancy, lived with him until her death in May 2001.  When plaintiff and Nancy married in 1976, Nancy had two children from a previous relationship, including William Fort.  In June 2001, William, Kathleen, and their son were living in plaintiff's home.  William and Kathleen did not pay plaintiff rent and did not contribute toward household expenses.  They stored their belongings in plaintiff's garage.

Plaintiff was out with his biological daughter when the fire occurred on June 17, 2001.  William called plaintiff to inform him of the fire and said that he was working in the yard when the fire occurred.  William said that, before the fire, he was in the garage looking for charcoal lighter fluid.  About 30 minutes later, William smelled smoke and then discovered the fire.  Plaintiff had no independent knowledge of the circumstances surrounding the fire.

During his examination under oath, William Fort testified that he and his wife moved into plaintiff's home in May 2001 because their unemployment benefits were about to expire and they had been evicted from their home in McHenry.  Shortly thereafter, William's and Kathleen's teenage son moved into plaintiff's home.  At the time of his testimony, William was still paying overdue electric, gas, and telephone bills for the McHenry home.  Although he could not remember for certain, William believed that he had returned to work shortly before the fire.

Between 1 and 1:30 p.m. on June 17, 2001, William and his son went out to the garage to look for a pair of shorts for Kathleen.  While William looked for the shorts, William's son found some charcoal for a barbecue.  William and his son left the garage after about five minutes.  William went next door to borrow lighter fluid from a neighbor.  William used the lighter fluid and returned it.  He lit the grill, and he and his son started cleaning gutters.  Shortly thereafter, William smelled smoke and then saw smoke and fire coming from the garage.  William opened the garage doors and used a garden hose to spray water on the fire.  Also, he unsuccessfully attempted to remove the automobile that was parked in the garage.  After several minutes, the fire department arrived and extinguished the fire.  William called plaintiff to inform him about the fire.  William testified that he was not sure what caused the fire and denied starting it.  He and his family moved out of plaintiff's home in either July or August 2001.

Kathleen testified that she and William moved into plaintiff's home in February 2001.  She likewise recalled that William had returned to work shortly before the fire.  At the time of the fire, Kathleen was inside cooking vegetables.  She saw William and her son go out to the garage to look for lighter fluid.  She learned about the fire when her son came inside looking for an extinguisher.  Her son dialed 9-1-1, and she stayed on the telephone with the operator.  William came inside to get the keys to the car parked in the garage.  From inside the house, Kathleen saw William using a garden hose to water down the car.  Kathleen did not believe that the fire was set intentionally.

According to the fire department report, when firefighters arrived on the scene, William was attempting to extinguish the fire with a garden hose.  There was heavy damage to the structure and to furniture and clothes stored in the garage.  A strong odor of flammable liquid was present near a mattress.  William told the fire department investigator that he and his family were evicted from their home in February 2001 and had been living with plaintiff since that time.  William and his family stored their belongings in the garage.  On the day of the fire, William and his son entered the garage to find some clothes and left when they did not find what they were looking for.  William's son reported that William borrowed charcoal lighter fluid from a neighbor.  William told the investigator that he lit the grill and then began working in the yard.  He smelled smoke and then saw smoke coming from the garage.  The report concluded that the fire was suspicious.

At defendant's request, a fire investigator examined the scene.  According to his report, the investigator observed low burn patterns at or near floor level.  Tests of a sample of stacked cardboard found at the center of the garage revealed the presence of a medium petroleum distillate.  William told the investigator that, about five minutes before the fire, he and his son were in the garage looking for clothing.  William did not notice anything unusual.  About five minutes after leaving the garage, William smelled and saw smoke coming from the garage.  Patty Seebock, a neighbor, reported that she saw William and his son leaving the garage.  About five minutes later, she heard someone yell "fire."  Another neighbor, Sam Gattuso, reported that William asked to borrow lighter fluid.  Gattuso gave William lantern fuel, and William returned it about 15 minutes later.  Shortly thereafter, Gattuso heard people yelling "fire."  The investigator concluded that the fire originated at or near floor level, was incendiary, and was caused by the ignition of a flammable liquid by an open flame.

The trial court granted defendant's motion for summary judgment and denied plaintiff's motion.  The court found that (1) William Fort was an insured under plaintiff's policy, (2) there was no evidence to suggest that William was not responsible for the fire, (3) the policy clearly and unambiguously precluded recovery by plaintiff, (4) William made material misrepresentations to defendant, and (5) plaintiff was an innocent insured.  Plaintiff timely appealed.

III. DISCUSSION

A. Standard of Review

On appeal, plaintiff argues that, as an innocent insured, he is entitled to recover under the policy despite the alleged wrongdoing of his stepson.  A summary judgment is appropriate where, when viewed in the light most favorable to the nonmovant, the pleadings, depositions, admissions, affidavits, and exhibits on file reveal that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 2002); 
West Bend Mutual Insurance Co. v. Mulligan Masonry Co.
, 337 Ill. App. 3d 698, 701-02 (2003).  Although the nonmovant need not prove his or her case at the summary judgment stage, he or she must come forward with evidence that establishes a genuine issue of material fact
.  
Mulligan Masonry
, 337 Ill. App. 3d at 702.  We review the trial court's decision 
de novo
.  
Westfield National Insurance Co. v. Continental Community Bank & Trust Co.
, 346 Ill. App. 3d 113, 116 (2003).  We note that, although he raised the argument below, plaintiff does not argue on appeal that there is a question of fact about whether William intentionally started the fire.

B. Relevant Policy Language

Plaintiff's homeowner's policy contains the following relevant definitions:

"1. '
You
' or '
your
' -- means the person named on the Policy Declarations as the insured and that person's resident spouse.

2. '
Allstate
,' '
we
,' '
us
,' or '
our
' -- means the company named on the Policy Declarations.

3. '
Insured person(s)
' -- means 
you
 and, if a resident of 
your
 household:

a) any relative; and

b) any dependent person in 
your
 care."  (Emphasis in original.)

Plaintiff does not dispute that William and Kathleen Fort were insureds at the time of the loss.

According to the "joint obligations" clause found among the general policy declarations:

"The terms of this policy impose joint obligations on persons defined as an 
insured person
.  This means that the responsibilities, acts and failures to act of a person defined as an 
insured person
 will be binding upon another person defined as an 
insured person
."  (Emphasis in original.)

The general policy declarations section also states:

"
We
 do not cover any loss or 
occurrence
 in which any 
insured person
 has concealed or misrepresented any material fact or circumstance."  (Emphasis in original.)

The following exclusions apply to all of the property coverages:

"
We
 do not cover loss to the property described in 
Coverage A -- Dwelling Protection
[,] *** 
Coverage B -- Other Structures Protection
 [or 
Coverage C -- Personal Property Protection
] consisting of or caused by:

* * *

7. The failure by any 
insured person
 to take all reasonable steps to preserve property when the property is endangered by a cause of loss 
we
 cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an 
insured person
.

9. Intentional or criminal acts of or at the direction of any 
insured person
, if the loss that occurs:

a) may be reasonably expected to result from such acts; or

b) is the intended result of such acts.

This exclusion applies regardless of whether or not the 
insured person
 is actually charged with, or convicted of a crime."  (Emphasis in original.)

C. Innocent Insured Doctrine

When construing an insurance policy, the court must ascertain the parties' intent.  
Konami (America), Inc. v. Hartford Insurance Co. of Illinois
, 326 Ill. App. 3d 874, 879 (2002).  If the policy terms are unambiguous, the court will afford them their plain, ordinary, and popular meaning.  
Konami
, 326 Ill. App. 3d at 879.  If, however, the terms are susceptible to more than one interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer that drafted the policy.  
Konami
, 326 Ill. App. 3d at 879.

The leading Illinois decision applying the innocent insured doctrine is 
Economy Fire & Casualty Co. v. Warren
, 71 Ill. App. 3d 625 (1979).  In 
Economy
, the trial court found that a woman intentionally set fire to her and her husband's home.  On appeal, the husband argued that, because he was innocent of any wrongdoing, he was entitled half of the insurance proceeds.  The reviewing court agreed and reasoned that "[w]e do not think the reasonable person in the position of William Warren would have supposed that the wrongdoing of his co-insured would be imputed to him.  If the [insurer] intended such a result, it should have made the terms of the policy more express in this regard."  
Economy
, 71 Ill. App. 3d at 629; see also 
Fittje v. Calhoun County Mutual County Fire Insurance Co.
, 195 Ill. App. 3d 340, 346 (1990) (following 
Economy
).

The 
Economy
 court did not cite the insurance policy provision it was interpreting.  The policy in 
West Bend Mutual Insurance Co. v. Salemi
, 158 Ill. App. 3d 241 (1987), however, provided that it was " 'void if any insured has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance. ' "  
Salemi
, 158 Ill. App. 3d at 247.
  In 
Salemi
, each party to a real estate sale contract was an insured under a policy covering the property that was the subject of the agreement.  A fire partially destroyed the property, and the buyer was suspected of intentionally starting the fire. 
 The reviewing court rejected the insurer's claim that the provision rendered the policy void as to all insureds as a result of the wrongdoing of any insured.  
Salemi
, 158 Ill. App. 3d at 247-48.  According to the court, the clause stated neither that the policy was void as to all insureds nor that it was void only as to the guilty insured in the event of some improper behavior.  
Salemi
, 158 Ill. App. 3d at 248.  Absent a clear statement that the policy was void as to all insureds, 
Economy
 controlled.  
Salemi
, 158 Ill. App. 3d at 249.
  If the insurer intended both the buyer and the seller to be barred from recovery in the event of wrongdoing by either one of them, then it should have employed policy language that expressly and clearly stated its intent.  
Salemi
, 158 Ill. App. 3d at 249.

In 
State Farm Fire & Casualty Insurance Co. v. Miceli
, 164 Ill. App. 3d 874 (1987), the court applied the same reasoning to hold that policy language essentially identical to that in 
Salemi
 did not preclude a husband and wife from recovering after their son vandalized property in the family's home.  According to the court, it was reasonable for the husband and wife to have assumed that their rights were not dependent upon those of their children.  
Miceli
, 164 Ill. App. 3d at 881.

The exclusionary clauses in plaintiff's policy are essentially the same as those in 
Salemi
 and 
Miceli
.  They are triggered by certain acts or failures to act of "any 
insured person
" or of "an 
insured person
."  (Emphasis in original.)  Although the clauses could be read as entirely prohibiting coverage for a loss caused by the act or failure to act of "any" insured, they do not clearly state that the policy will be void or coverage will be excluded as to all insureds in the event of some improper behavior by "any" insured.  We conclude that the policy interpretation applied in 
Salemi
 and 
Miceli
 governs the interpretation of the exclusions in plaintiff's policy.

Defendant argues that 
Salemi
 and 
Miceli
 are distinguishable because there is no indication that the policies in those cases contained joint obligations clauses.  The joint obligations clause in plaintiff's policy provides that "the responsibilities, acts and failures to act of a person defined as an 
insured person
 will be binding upon another person defined as an 
insured person
."  (Emphasis in original.)  T
he presence of this language does not change the result.  Exclusions are to be construed narrowly.  
National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District
, 158 Ill. 2d 116, 123 (1994).  The "joint obligations" language is not a part of any of the exclusionary clauses but is instead found among the general policy declarations.  We agree with plaintiff that one plausible construction of the joint obligations clause is that it refers to the general obligations to pay premiums and to take certain actions before and after a loss and that a reasonable insured would not understand the clause to exclude coverage for all insureds when coverage is excluded for one insured.  See 
Allstate Insurance Co. v. Worthington
, 46 F.3d 1005, 1009 (10th
 Cir. 1995).  The clause refers to an insured's obligations under the policy and not to any of the exclusions that preclude recovery for a loss caused by wrongdoing on the part of an insured.  See 
C.P. v. Allstate Insurance Co.
, 996 P.2d 1216, 1226 (Alaska 2000) (noting that "it is not clear how the joint obligations clause even bears on the exclusionary language critical here").  One decision upon which defendant relies even recognizes that the joint obligations clause is "more than a little mysterious."  
Allstate Insurance Co. v. Steele
, 74 F.3d 878, 881 (8th
 Cir. 1996).  The joint obligations clause is, at best, ambiguous.  Therefore, we will not interpret it broadly enough to exclude coverage for an innocent insured when another insured has intentionally or criminally caused a loss.

IV. CONCLUSION

We hold as a matter of law that, as an innocent insured, plaintiff is entitled to recover for the losses he sustained as a result of the fire.  Therefore, the trial court should have denied defendant's motion for summary judgment and granted plaintiff's motion for summary judgment.

Accordingly, the judgment of the circuit court of Lake County is reversed.

Reversed.

McLAREN and HUTCHINSON, JJ., concur.