NO. 4-06-0208      Filed 2/20/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| RODNEY J. BARTH, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | No. 04L220 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Patrick W. Kelley, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In March 2005, plaintiff, Rodney J. Barth, filed a second-amended complaint against defendant, State Farm Fire and Casualty Company, claiming defendant failed to pay an insurance claim following a house fire.  In December 2005, a jury found in favor of defendant.

On appeal, plaintiff argues (1) the trial court erred in failing to give plaintiff's instructions to the jury, (2) the trial judge erred in not recusing himself from the case, (3) the court erred in prohibiting plaintiff from presenting certain evidence, (4) the court erred in not granting the motion for judgment notwithstanding the verdict as to the second affirmative defense, and (5) the jury's verdict on the second affirmative defense was against the manifest weight of the evidence.  We affirm.

I. BACKGROUND

In March 2005, plaintiff filed a second-amended complaint against defendant, seeking to recover losses that resulted from a house fire in Auburn. Plaintiff alleged (1) defendant breached its homeowner's policy by failing to pay the claim, (2) defendant's refusal to pay and/or delay in settlement was unreasonable and vexatious, and (3) the denial amounted to intentional infliction of emotional distress.

In April 2005, defendant set forth three affirmative defenses, including the "intentional act provision" of the policy, the "concealment or fraud provision" of the policy, and set-off. Under the second affirmative defense concerning concealment or fraud, defendant alleged plaintiff hid the actual status of his financial condition by misrepresenting the status of his mortgage, his satellite-television service, and his ability to withdraw money from an automated teller machine (ATM), and by not revealing the existence of his American Express card. Defendant alleged plaintiff's financial condition was a motive for the fire.

In June 2005, plaintiff filed a motion for substitution of judge for cause pursuant to section 2-1001(a)(3) of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-1001(a)(3) (West 2004)). The motion alleged Judge Patrick Kelley had recently disclosed he was an insured of defendant, thereby creating an appearance of partiality. Judge Kelley referred the

- 2 -

motion to Judge Robert Eggers for a hearing on the matter. Judge Eggers indicated he too was insured by State Farm and reassigned the case. Judge Leo Zappa heard the motion, denied it, and referred the case back to Judge Kelley for trial. In December 2005, Judge Kelley filed an order to clarify that his prior referral of the motion for substitution to Judge Eggers was considered as a motion for recusal and Judge Kelly intended to deny that motion by referring it to Judge Eggers.

At trial, William Bolletta testified he was certified as an arson investigator in 1996. On June 2, 2003, Bolletta responded to a fire at plaintiff's home in Auburn. Upon arrival, he was advised that the fire appeared to have different points of origin. Bolletta talked to an individual, suggested by counsel to be William Penn, who remarked he had been at the scene of other fires and was "amazed" at how fast the fire department responded. Bolletta spoke with plaintiff, who was sitting in a vehicle and appeared "very agitated."

On cross-examination, Bolletta testified he believed the fire in the kitchen had "a couple of points of origin" that appeared to be unrelated. The fire in the bedroom was also unrelated to the kitchen fire. He came to the conclusion the bedroom fire was not accidental. It was Bolletta's opinion that the occupants of the house started the fire, left, then returned to see the fire did not take, and started another fire.

Plaintiff called Cheryl Jyawook as an adverse witness. She worked as a claim representative for State Farm. After the fire, Jyawook provided plaintiff with various forms to inventory property. She stated the coverage limits on the property amounted to $102,599. Jyawook determined that plaintiff was behind in his mortgage payments. Defendant denied the claim on March 31, 2004.

Plaintiff's evidence deposition was read to the jury. Plaintiff testified he suffered from polio and had been in a wheelchair since he was 12 years old. He obtained a bachelor's degree and a master's degree in education and worked in state government for over 20 years. He quit working because of his weakened physical condition and depression, and he began receiving disability income. Plaintiff paid $77,500 for his house in Auburn with monthly mortgage payments totaling $511.74. He had the house insured with State Farm. After the fire, the house was sold for $52,500.

In 2002, plaintiff did not have a driver's license and used a taxi to take him to Springfield. He met William Penn, whom he later hired to drive him when necessary. Plaintiff allowed Penn to keep his car and would call him if he needed a ride. At one point, Penn introduced plaintiff to William Burmeister, "a sidekick of Penn's."

In March 2003, plaintiff discovered he had bounced

checks in his bank account. He also thought he failed to receive some of his mail. As of June 2003, plaintiff believed he had a net worth of $72,638. He had received an American Express card in January or February 2003, and the $4,202.86 in charges for February 2003 were not authorized by him. Penn had borrowed the American Express card, and plaintiff authorized the purchase of eyeglasses and a tattoo. Plaintiff did not authorize $3,200 worth of cash advances on his Visa card in March 2003. Penn also had access to the Visa card. Near the time of the fire, plaintiff gave Penn $700 in cash to pay $511.74 for the mortgage and $188.16 for the car payment. Plaintiff believed Penn did not deliver the money because the amount was not recorded. Plaintiff later made up the payments in August 2003.

On June 2, 2003, Penn and Burmeister showed up at plaintiff's residence at around 4:15 p.m. At around 7:30 p.m., the three men decided to leave. Penn lifted plaintiff into the car and placed his wheelchair in the trunk. Penn also took plaintiff's shaving kit from the house and put it in the car. Plaintiff found this "odd" but did not say anything. The men traveled to Chatham and stopped at a cigar store and then a gas station. They then drove aimlessly around Chatham before returning to Auburn at around 9 p.m. The men exited the car and talked in the garage. Some time later, Penn and Burmeister wanted to rent some movies. Penn entered the house for about 10

minutes, while plaintiff used his cellular phone to call his neighbor to borrow $20.

The men reentered the car and headed toward Virden. They stopped at a bank around 10:20 p.m. so plaintiff could get a cash advance using his Visa card. Plaintiff gave Penn the card and the personal identification number, but the transaction was declined for insufficient funds. Penn tried again with the same result. Plaintiff was "surprised" because he thought he had enough money available in the account. They continued to a video store, and Penn and Burmeister were in the store for about 20 minutes.

The men returned to Auburn, and Penn stopped the car in the driveway. Penn indicated he needed to use the bathroom. Plaintiff watched Penn open the door and noticed "what looked like steam" coming out of the house. Penn returned to the car and asked plaintiff for his keys. Penn then tried the front door and opened it, and plaintiff saw smoke. Penn came back to the car and yelled for plaintiff to call the fire department. Plaintiff made the call at 10:52 p.m. and then waited for the fire department to arrive. Because of the fire damage, plaintiff stayed at a hotel with help from the Red Cross.

After the fire, plaintiff met with representatives from State Farm. Plaintiff told Jyawook his satellite-television service had been disconnected because he owed $100. He also

provided her with a copy of his credit report in August 2003. The report showed his accounts with American Express and Visa. If he failed to mention the American Express card in a June 10, 2003, recorded statement, it was "inadvertent." Plaintiff testified he did not start and did not tell anyone to start the fire. Plaintiff learned from Jyawook that Penn and Burmeister had criminal records.

On cross-examination, plaintiff acknowledged he did not identify to State Farm in his June 10, 2003, recorded statement that he had an American Express card. He received the card in February 2003 and used it "a few times." American Express contacted him in May 2003, and he was surprised at the balance. Penn had the card for several months and put off returning it. At the time of the fire, plaintiff was not current with his utility bills.

John Pinneo testified he worked as a fire investigator for the Sangamon County sheriff's office. He responded to the fire at plaintiff's residence and found the fire was suspicious. He determined at least two fires started in two separate areas of the house. Pinneo opined the two distinct and separate fires led him to conclude an incendiary arson fire had occurred. Several weeks after the fire, Pinneo asked to talk to plaintiff through his attorney, but he found the restrictions that would be placed on the interview to be unacceptable. Pinneo contacted defendant

and indicated the fire had been set.

Jeff Jones worked in collections with the Bank of Springfield. Jones testified he contacted plaintiff in November 2002 to tell him he was past due on his mortgage payment. Jones contacted plaintiff in December, indicating he was past due for his November payment. As of June 2, 2003, plaintiff was two months behind on his mortgage payments, but payment would have been accepted by June 15 without a late charge being applied.

Following closing arguments, the jury found for defendant and against plaintiff. The verdict form indicated the jury found defendant proved by clear and convincing evidence that plaintiff concealed or misrepresented a fact or circumstance or made a false statement relating to the insurance, or he misrepresented any material fact to defendant either before or after the claim. The jury also found (1) the fact concealed or misrepresented, or the subject of the false statement, was material; (2) the concealment, misrepresentation, or false statement was made to defendant or their agents; and (3) the concealment, misrepresentation, or false statement was made knowingly, willfully, and with intent to deceive defendant.

In January 2006, plaintiff filed a posttrial motion, seeking judgment notwithstanding the verdict or for a new trial. In February 2006, the trial court denied the motion. This appeal followed.

II. ANALYSIS

A. Jury Instructions

Plaintiff argues the trial court should have given his proposed jury instructions on the law of misrepresentation as the policy only contained an exclusion for intentional misrepresentation without any further definition or limitation. We disagree.

A party has the right to have the jury clearly and fairly instructed on each theory supported by the evidence. Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 100, 658 N.E.2d 450, 458 (1995). Whether to give a jury instruction is within the discretion of the trial court. Snelson v. Kamm, 319 Ill. App. 3d 116, 139, 745 N.E.2d 128, 148 (2001). A trial court's refusal to give a tendered instruction will result in the granting of a new trial only when the refusal amounts to a serious prejudice to a party's right to a fair trial. Linn v. Damilano, 303 Ill. App. 3d 600, 607, 708 N.E.2d 533, 538 (1999). In determining the propriety of the trial court's tendered instructions, the test is "whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 273-74, 775 N.E.2d 964, 973 (2002).

In the case sub judice, the "concealment or fraud"

- 9 -

provision of the insurance policy stated as follows:

"This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss." (Emphasis in original.)

On the affirmative defense of misrepresentation, the trial court instructed the jury that defendant must prove (1) plaintiff concealed or misrepresented a fact or circumstance, or made a false statement, relating to the insurance at issue; (2) the fact concealed or misrepresented, or the subject of the false statement, was material; (3) the concealment, misrepresentation, or false statement was made to State Farm or its agents; and (4) the concealment, misrepresentation, or false statement was made knowingly, willfully, and with intent to deceive State Farm. Plaintiff, however, argues the court should have instructed the jury on two additional elements of common-law fraudulent misrepresentation, requiring action by a party in reliance on the truth of the statements and damage to that party as a result of the reliance. See Board of Education of City of Chicago v. A, C & S, Inc., 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (1989).

"An insurance policy is a contract, and the general

- 10 -

rules governing the interpretation of other types of contracts also govern the interpretation of insurance polices." Hobbs v. Hartford Insurance Co. of the Midwest, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005). "Under policy provisions voiding coverage if the insured willfully conceals any material fact, or in the case of fraud or false swearing, courts will deny recovery to an insured who has made deliberate material misstatements in the sworn proof of loss." Marvel Engineering Co. v. Commercial Union Insurance Co., 118 Ill. App. 3d 844, 848, 455 N.E.2d 545, 548 (1983).

In this case, defendant did not raise a claim of fraudulent misrepresentation. Instead, defendant's second affirmative defense concerned the "concealment or fraud" provision of its insurance policy. That provision indicates the policy is void if the insured intentionally concealed or misrepresented a material fact or circumstance relating to the insurance. Thus, the issue centers on whether plaintiff misrepresented or concealed material facts, not whether defendant detrimentally relied on those misrepresentations.

In Passero v. Allstate Insurance Co., 196 Ill. App. 3d 602, 604, 554 N.E.2d 384, 385 (1990), the insurance policy at issue contained a provision voiding the policy if the insured intentionally concealed or misrepresented any material fact or circumstance before or after the loss. The appellate court

- 11 -

focused on the material nature of the misrepresentations and noted the definition of material misrepresentation is different in insurance law than in cases involving common-law, statutory, and consumer fraud. Passero, 196 Ill. App. 3d at 606, 554 N.E.2d at 387. The question in Passero dealt with whether the misrepresentations were material and did not indicate prejudice and detrimental reliance had to be shown by the insurer to succeed in denying the claim under the policy.

In contrast, plaintiff cites A&A, Inc. v. Great Central Insurance Co., 259 Ill. App. 3d 73, 76, 630 N.E.2d 1002, 1004 (1994), where the insurer asserted the affirmative defense that the insured was barred from recovery because it misrepresented a subject matter of the policy and engaged in conduct to defraud the insurer. The policy also included a provision indicating concealment or misrepresentation of material facts or an attempt to defraud the insurer would void the policy. A&A, 259 Ill. App. 3d at 76, 630 N.E.2d at 1004. On appeal, the First District found the jury should have been given instructions on whether the alleged false statement was material and the definition of fraudulent misrepresentation, thereby raising the issues of materiality and reliance on the misrepresentation. A&A, 259 Ill. App. 3d at 83, 630 N.E.2d at 1008-09.

Here, however, the policy language at issue did not invoke fraud as a basis for voiding the policy, and defendant's

second affirmative defense was not based on a claim that plaintiff attempted to defraud defendant. Thus, no proof of fraud or detrimental reliance was required. Instead, defendant had to show plaintiff misrepresented or concealed a material fact to void the policy. The instructions given by the trial court adequately informed the jury of the law on the issue that was decided given the evidence presented. We find no abuse of discretion.

### B. Recusal

Plaintiff argues the trial judge erred in not recusing himself when he had an ongoing relationship with defendant as an insured of State Farm. We disagree.

Section 2-1001(a)(3)(iii) provides as follows with respect to substitution of judge for cause:

> "Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition." 735 ILCS 5/2-1001(a)(3)(iii) (West 2004).

Here, plaintiff's motion was referred to and denied by Judge Zappa. "A reviewing court will not reverse a determination on allegations of judicial prejudice unless the finding is contrary to the manifest weight of the evidence." Jacobs v.

- 13 -

Union Pacific R.R. Co., 291 Ill. App. 3d 239, 244, 683 N.E.2d 176, 180 (1997). We, however, cannot make a determination on Judge Zappa's findings because none appear in the record. Counsel for both parties appeared at an August 2005 hearing on the motion and argued the merits. No transcript has been provided and no bystander's report has been included in the record. Absent a transcript or suitable substitute for proceedings in the trial court, a reviewing court will not consider the alleged errors. Smith v. Central Illinois Public Service Co., 176 Ill. App. 3d 482, 497, 531 N.E.2d 51, 61 (1988). Thus, we will not consider whether Judge Zappa's decision was against the manifest weight of the evidence.

Plaintiff, however, appears to argue that Judge Kelley should have sua sponte recused himself under Supreme Court Rule 63(C)(1) (188 Ill. 2d R. 63(C)(1)). Rule 63 provides, in part, as follows:

> "A judge shall disqualify himself or
> herself in a proceeding in which the judge's
> impartiality might reasonably be questioned,
> including but not limited to instances where:
>
> * * *
>
> (d) the judge knows that he or
> she, individually or as a fiduciary
> ***, has an economic interest in

- 14 -

the subject matter in controversy or in a party to the proceeding, or has any other more than de minimus interest that could be substantially affected by the proceeding." 188 Ill. R. 63(C)(1)(d).

Plaintiff concedes a trial judge merely being an insured of a mutual insurance company would constitute a de minimus economic interest. Plaintiff has cited no cases that would require a judge to recuse himself solely because he was to preside over a case involving an insurance company of which he just happened to be an insured. We note the preamble to the Code of Judicial Conduct defines "economic interest" as ownership of a more than de minimus legal or equitable interest and states "the proprietary interest of a policyholder in a mutual insurance company *** is not an economic interest in the organization unless a proceeding pending or impending before the judge could substantially affect the value of the interest." 145 Ill. 2d., Code of Judicial Conduct, Preamble, at xxix (eff. August 6, 1993). Here, plaintiff has not shown Judge Kelley had a direct, personal, and substantial pecuniary interest in this litigation. Accordingly, we find plaintiff's claim of partiality is not supported by the facts.

C. Evidentiary Rulings

Plaintiff argues the trial court erred in evidentiary rulings that prohibited him from presenting evidence that defendant did not reasonably rely to its detriment upon the alleged misrepresentation or that defendant was not sufficiently prejudiced or injured by the alleged misrepresentation. We find this issue forfeited.

"Mere contentions, without argument or citation of authority, do not merit consideration on appeal." Elder v. Bryant, 324 Ill. App. 3d 526, 533, 755 N.E.2d 515, 521-22 (2001). "A court of review 'is not simply a depository into which an appealing party may dump the burden of argument and research.'" In re Austin C., 353 Ill. App. 3d 942, 948, 823 N.E.2d 981, 986 (2004), quoting In re Estate of Thorp, 282 Ill. App. 3d 612, 616, 669 N.E.2d 359, 362 (1996). "A conclusory assertion, without supporting analysis, is not enough." Wolfe v. Menard, Inc., 364 Ill. App. 3d 338, 348, 846 N.E.2d 605, 613 (2006).

Here, plaintiff makes a conclusory argument that the trial court erred in its evidentiary rulings, and his only citation to authority focuses solely on the standard of review. Plaintiff's reply brief merely repeats the claim that the court erred in its evidentiary rulings. By failing to sufficiently or properly present this issue for review, plaintiff has forfeited this issue on appeal.

D. Judgment Notwithstanding the Verdict

Plaintiff argues the trial court erred in not granting the motion for judgment notwithstanding the verdict as to the second affirmative defense.  We disagree.

"A judgment notwithstanding the verdict is properly entered only if all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.  [Citation.]  In ruling on a motion for a judgment notwithstanding the verdict, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather, it may only consider the evidence and any inferences therefrom, in the light most favorable to the party resisting the motion."  Board of Trustees of Community College District No. 508 v. Coopers & Lybrand, 208 Ill. 2d 259, 274, 803 N.E.2d 460, 469 (2003).

"Judgment notwithstanding the verdict is not appropriate if 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.'"  McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257

- 17 -

(1999), quoting Pasquale v. Speed Products Engineering, 166 Ill. 2d 337, 351, 654 N.E.2d 1365, 1374 (1995).

In this case, the jury found plaintiff misrepresented a material fact or circumstance, or made a false statement, to defendant's agents with the intent to deceive State Farm. "False sworn answers are material if they might have affected the insurer's action or attitude, or if they may be said to have been calculated to discourage, mislead, or deflect the insurer's investigation in any area that might have seemed to it, at that time, a relevant area to investigate." Passero, 196 Ill. App. 3d at 609, 554 N.E.2d at 388.

Here, the evidence indicated plaintiff obtained an American Express card in January or February 2003, and he admitted approving some transactions with the card, including glasses and a tattoo for Penn. Later, $4,000 in charges accrued, and plaintiff did not attempt to make payments. Plaintiff did not mention the existence of this credit card in his June 10, 2003, recorded statement to Jyawook or his October 31, 2003, deposition, even though American Express had called him in May 2003. The balance on the card, and other financial concerns, provided motive for plaintiff to facilitate the fire to collect insurance proceeds. Also, plaintiff told Jyawook in his recorded statement that he could not retrieve funds from the ATM on the evening of the fire because he may have used the wrong password. At his

October 31, 2003, deposition, plaintiff stated his ATM card was rejected because of insufficient funds. Moreover, plaintiff claimed in his deposition he was current on his mortgage payments at the time of the fire, but Jeff Jones testified he would have contacted plaintiff prior to the fire regarding his late mortgage payments and computer-generated notices would have been mailed.

The jury considered the evidence and testimony presented at trial. It was in the best position to determine the credibility of the witnesses and decide whether plaintiff made an innocent mistake or materially misrepresented his financial condition to mislead State Farm's investigation. Considering the evidence in the light most favorable to defendant, we find the evidence does not so overwhelmingly favor plaintiff that a verdict in favor of defendant cannot stand. Thus, the trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict.

### E. Second Affirmative Defense

Plaintiff argues the jury's verdict on the second affirmative defense was contrary to the manifest weight of the evidence. We disagree.

> "A reviewing court will set aside a
> jury's verdict only if it was against the
> manifest weight of the evidence. [Citation.]
> Under this standard of review, we will re-

verse a jury verdict only (1) if it is unreasonable, arbitrary, and not based on evidence, or (2) when the opposite conclusion is clearly apparent to us.  [Citation.]" Bachman v. General Motors Corp., 332 Ill. App. 3d 760, 803, 776 N.E.2d 262, 300 (2002). "'[I]t is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony.'" Redmond v. Socha, 216 Ill. 2d 622, 652, 837 N.E.2d 883, 900 (2005), quoting Maple v. Gustafson, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 511-12 (1992).

Here, the jury heard the evidence and had the opportunity to judge the credibility of the witnesses.  The jury resolved the case in defendant's favor, and the record fails to demonstrate an opposite conclusion is clearly evident or that the verdict was unreasonable and not based on the evidence.  Thus, the jury's verdict was not against the manifest weight of the evidence.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, J., concurs.

- 20 -

COOK, J., dissents.


JUSTICE COOK, dissenting:

I respectfully dissent. The jury should have been instructed that a misrepresentation is not material unless the insurer somehow could have relied on it. I would reverse and remand for a new trial.

It is incorrect to say that "fraud" has no application to this case. The clause upon which State Farm relies to void this policy is captioned "Concealment or Fraud." Innocent misrepresentations are not enough; the misrepresentations must be

fraudulent or something like it.  We should deal with a "Conceal-ment or Fraud" clause carefully.  In the context of common-law fraud, the law presumes that transactions are fair and honest; fraud is not presumed.  Accordingly, fraud must be proved by clear and convincing evidence.  Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 191, 835 N.E.2d 801, 856 (2005).

Exclusionary clauses, which run counter to the basic purpose of the policy to afford coverage, are strictly construed against the insurer.  Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 119, 607 N.E.2d 1204, 1217 (1992); Wasik v. Allstate Insurance Co., 351 Ill. App. 3d 260, 267, 813 N.E.2d 1152, 1158 (2004) (innocent insured entitled to recover despite arson of co-insured).  "Illinois courts will liberally construe any doubts as to coverage in favor of the insured, especially when the insurer seeks to avoid coverage based on an exclusion."  Johnson Press of America, Inc. v. Northern Insurance Co. of New York, 339 Ill. App. 3d 864, 871-72, 791 N.E.2d 1291, 1298 (2003). In the general nature of things, information is usually developed during an investigation; what is believed or assumed to be correct at the beginning may be explained to be otherwise at the end.  We should avoid an interpretation that allows the insurer, in hindsight, to seize upon any misstatement made during its investigation and use that misstatement to void

the policy.  It should not be enough that the insurer "feels" that it has been misled.

The "Concealment or Fraud" clause provides an easy fall-back position for an insurer that cannot prove the insured committed arson.  For example, in A&A, the jury first found that the insured had not been involved in setting the fire but then went on to find the insured had violated the "Concealment or Fraud" clause.  A&A, 259 Ill. app. 3d at 74, 630 N.E.2d at 1003.  The appellate court reversed and remanded.  It is interesting that, in the present case, the jury was first asked whether the insured had violated the clause and, after it had answered that question in the affirmative, it did not even address the question whether the insured had been involved in setting the fire, despite the fact that arson had been the focus of the evidence presented.  The real question in this case was whether Penn and Burmeister took advantage of the insured, but State Farm was allowed to limit the jury's inquiry to whether the insured, even if he had been taken advantage of, had made a misstatement.

It is not enough to void a policy that an insured has made a misstatement on an unimportant matter. "[F]alse answers are material if they might have affected the attitude and action of insurer, and they are equally material if they may be said to have been calculated either to discourage, mislead, or deflect a company's investigation in any area that might seem to the

- 23 -

company, at that time, a relevant or productive area to investigate."  (Emphasis added.)  Couch on Insurance §197:16, 197-38, 197-39 (3d ed. 2005).  The same statement is made in Passero.  Passero, 196 Ill. App. 3d at 609, 554 N.E.2d at 388.  State Farm's instruction appears to be taken from Passero, but it significantly changes the highlighted language.  State Farm's instruction states:  "A concealment, misrepresentation[,] or false statement is material if a reasonable insurer would attach importance to it at the time it was made.  A reasonable insurer would attach importance to any fact or statement that would affect the insurer's action or attitude regarding a claim by an insured."

There are several problems with State Farm's instruction.  First of all, it is phrased in the abstract.  It would make no difference that State Farm, in this particular case, could not have been affected by the alleged misstatement.  The question is how a "reasonable insurer" would have been affected.  It is not clear where that language came from; it did not come from Passero, the principal case on which State Farm relies.  The language whether a reasonable insurer "would attach importance to it" is also troubling.  It should not be enough that an insurer might "feel" that an answer is important.  Something more is required than a general statement that insurers rely on insured's representations when ascertaining the true facts of a loss.

Couch on Insurance §197:19, 197-44, 197-47 (3d ed. 2005). State Farm's instruction is defective because it significantly lessens the requirement that the alleged misstatement be one that "might have affected" the insurer. Under the instruction, any misstatement, no matter how minor, can be used to void the policy.

In a case similar to ours, the First District has stressed the importance of the materiality definition. Without holding that a definition of fraudulent misrepresentation must be given, the First District said that at least if that instruction had been given, the jury would have known that it was necessary that "'the person to whom the representation was made had a right to rely upon it and in fact did so.'" A&A, 259 Ill. App. 3d at 83, 630 N.E.2d at 1009. A&A did not explain the extent to which an insurer must "in fact" rely on the representation, but certainly materiality requires that the insurer "had a right to rely" upon the representation.

"Reliance" has been a difficult concept in these cases. Certainly the insurer is not required to pay improper claims as a precondition to its denial of the same claims on grounds of violation of the policy condition. State Farm Fire & Casualty Insurance Co. v. Graham, 567 N.E.2d 1139, 1141 (Ind. 1991).

> "However, as used in the policy condition, the phrase 'if any insured has intention- ally concealed or misrepresented any

- 25 -

material fact or circumstance' reasonably means more than momentary or inadvertent concealment or misrepresentation. Facts demonstrating a voluntary correction of error would be probative evidence on the issue of intentional concealment or misrepresentation."

Graham, 567 N.E.2d at 1141.

This court has previously required reliance, recognizing that insurers are unlikely to "give any significant weight to" a speculative assertion by an insured. Nagel-Taylor Automotive Supplies, Inc. v. Aetna Casualty & Surety Co., 81 Ill. App. 3d 607, 612, 402 N.E.2d 302, 306 (1980) (recovery allowed despite clearly unreasonable estimate of lost profits; jury rejected evidence that insured was complicit in arson).

The Passero case, which stated that the definition of material misrepresentations is "quite different" in the realm of insurance law, involved a unique situation, very different from our case. In Passero, the insureds argued that their admittedly false statements, consisting of altered receipts for personal property, were not material because their policy provided replacement-cost coverage. Passero, 196 Ill. App. 3d at 609, 554 N.E.2d at 389. The First District rejected the insured's technical argument that the statements were not material and affirmed summary judgment for the insurer. Passero, 196 Ill. App. 3d at

611, 554 N.E.2d at 390.  Passero did not hold that reliance was irrelevant under the "Concealment or Fraud" clause.  Passero held that false answers were material only if they might have affected the insurer, which is another way of saying only if the insurer "had a right to rely" upon the representations.  Passero, 196 Ill. App. 3d at 608-09, 554 N.E.2d at 388; see also A&A, 259 Ill. App. 3d at 83, 630 N.E.2d at 1009 ("had a right to rely").  Passero recognized that "relatively innocent" misrepresentations were not a basis for voiding a policy.  Passero, 196 Ill. App. 3d at 610, 554 N.E.2d at 389.

There was no misrepresentation in the present case that might have affected the disposition of the claim.  Plaintiff met with State Farm's adjuster on June 10, 2003, after the fire.  Plaintiff told the adjuster about his financial problems.  He did not mention his American Express card, but he told her he would furnish a credit report.  The credit report was furnished in August 2003, showing the $4,202.86 in charges on the American Express card.  There is no way State Farm could have been harmed by the brief failure to mention the American Express card.  State Farm did not ask plaintiff about the American Express card when it took his evidence deposition on October 31, 2003.  Plaintiff told State Farm on June 10 that he could not use his ATM card, perhaps because he used the wrong password.  At the deposition, he told State Farm he had learned the card was rejected because

of insufficient funds.  Plaintiff was making mortgage payments in 2003 but, at the time of the fire, was two months behind, although he had not incurred any late-payment charges.

It is not an adequate discharge of our duties to simply leave the matter to the jury, particularly when the jury has not been properly instructed.  There has to be evidence to support a jury verdict.  How could State Farm have been harmed by anything the insured said, or did not say, regarding the American Express card?  State Farm's other complaints are equally trivial.  The insured misrepresented whether he had satellite television service at the time of the fire?  The insured disclosed that he could not draw money from his ATM but misrepresented the reason why?  The jury should not have been allowed to conclude that any misstatement, no matter how insignificant, could be material.  The fact that insurers generally rely on insureds' representations does not mean that every alleged misrepresentation is material.  Couch on Insurance §107:19 (3d ed. 2005).

The instruction defining what is "material" did not adequately state the law.  As in A&A, if the insured's instruction had been given, the jury would at least have known that the person to whom the representation was made had to have a right to rely upon it.  A&A, 259 Ill. App. 3d at 83, 630 N.E.2d at 1009.  The jury's verdict is contrary to the manifest weight of the evidence.  No reasonable jury could have concluded that State

Farm could have been affected by these statements or that the insured, who provided all the information, had any intent to deceive.